# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELLE IBARROLA, on behalf of herself And all others similarly situated | ) ) | |
| | ) | Civil Action No. 3:13-cv-50377 |
| Plaintiff, | ) ) | |
| v. | ) | District Judge Sara L. Ellis |
| | ) ) | Magistrate Judge Sidney L. Schenkier |
| KIND, LLC, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Nick Suciu, III
(*Admitted Pro Hac Vice*)
Oliver Law Group, PC
950 West University Dr., Suite 200
Rochester, MI 48307
Telephone: 248-327-6556
Facsimile: 248-436-3385
Email: Aoliver@oliverlg.com
Email: Nsuciu@oliverlg.com

Edward A. Wallace (Bar No. 06230475)
Dawn M. Goulet (Bar No. 6299896)
Wexler Wallace, LLP
55 W. Monroe St., Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
Facsimile: 312-346-0022
Email: EAW@wexlerwallace.com
Email: DMG@wexlerwallace.com

Jordan L. Chaikin
(*Admitted Pro Hac Vice*)
Parker Waichman LLP
3301 Bonita Beach Road, Suite 101
Bonita Springs, FL 34134
Telephone: 239-390-1000
Facsimile: 239-390-0055
Email: jchaikin@yourlawyer.com

Eric D. Holland (Bar No. 06207110)
R. Seth Crompton (Bar No. 6288095)
Holland, Groves, Schneller & Stolze, LLC
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com
Email: scrompton@allfela.com

*Counsel for Plaintiff ROCHELLE IBARROLA*

**TABLE OF CONTENTS**

Page

INTRODUCTION……………………………………………………………………………..1

BACKGROUND……………………………………………………………………………3

ARGUMENT…………………………………………………………………………………4

I.   THE DOCTRINE OF PRIMARY JURISDICTION DOES NOT APPLY………………4

    A.   The Majority of Courts Faced with This Exact
        Issue have Held the Doctrine Does Not Apply…………………………………..4

    B.   Defendant Reads Too Much Into the FDA's Decision to Re-Open the Comment
        Period on Its Draft Guidance……………………………………………………..6

    C.   Re-Opening the Comment Period Does Nothing to Diminish
        the Persuasive Value of Existing Decisions Holding the
        Primary Jurisdiction Doctrine Does Not Apply…………………………………7

II.   PLAINTIFF'S CLAIMS DO NOT FAIL AS A MATTER OF LAW…………………...8

    A.   Plaintiff Clearly Alleges Deception and Reliance………………………………...8

        1.   Plaintiff Does Not Allege that She Believed
             the Product to be Sugar Free……………………………………………9

        2.   *Kane* Is Not Analogous Because Plaintiff Sufficiently
             Alleges That Several Aspects of the Products Are Mislabeled…………..9

        3.   Kind's Labeling is Deceptive to a "Reasonable Consumer"…………….11

             (a)   Defendant Misrepresents The Sugar Source
                  in The Clusters Products In Order to Appeal To Consumers...….11

             (b)   Evaporated Cane Juice Is A Refined Sugar……………………...12

             (c)   Defendant's Use of ECJ As An Ingredient is Misleading………13

        4.   The Unjust Enrichment, Fraud, and ICFA Claims
             Should Not Be Dismissed Because Plaintiff
             Has Sufficiently Pled Deception…..........................................................14

**TABLE OF CONTENTS**
(continued)

B.    Plaintiff Has Established Standing……………………………………………15

  1.    Plaintiff Properly Alleges Injury and Actual Damages………………...15

  2.    Plaintiff Has Standing to Sue On All Products Because
        All of the Products at issue Are Substantially Similar…………………...16

  3.    Plaintiff Alleged Facts Sufficient To Establish Standing
        for Non-Illinois Sales……………………………………………………18

C.    Preemption

  1.    Plaintiff's Claim is Not Impliedly Preempted…………………………...19

  2.    Plaintiff's Claims Are Not Expressly Preempted………………………..19

    (a)    Plaintiff's Reliance on the Draft, Non-Binding Guidance
           Is Not Expressly Preempted Because Plaintiff Only Relies on
           The FDA Guidance to Show Defendant's Misleading and
           Illegal Conduct…………………………………………………..20

    (b)    Plaintiff Is Not Seeking to Impose Additional Disclosure
           Requirements……………………………………………………21

D.    The Complaint Complies With Rule 9(b)………………………………………21

CONCLUSION………………………………………………………………………22

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*Auer v. Robbins*
   519 U.S. 452 (1997)……………………………………………………………7

*In re Aqua Dots Prods. Liab. Litig.*
   654 F.3d 748 (7th Cir. Ill. 2011)………………………………………………15, 16

*Avery v. State Farm Mut. Auto. Ins. Co.*
   216 Ill. 2d 100, (Ill. 2005)……………………………………………………18

*Avoy v. Turtle Mt., LLC*
   2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014)………………………………..9

*Barbara's Sales, Inc. v. Intel Corp.*
   227 Ill. 2d 45, 879 N.E.2d 910, 316 Ill. Dec. 522 (Ill. 2007)……………………………14

*Bausch v. Stryker Corp.*
   630 F.3d 546 (7th Cir. 2010)……………………………………………………..19, 20

*Brown v. Hain Celestial Grp. Inc.*
   913 F.Supp.2d 881 (N.D. 2012)……………………………………………………..17

*Buckman Co. v. Plaintiffs' Legal Committee*
   531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001)………………………………19

*Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*
   2014 U.S. Dist. LEXIS 16871 (N.D. Ill. Feb. 11, 2014)………………………………...16

*Colucci v. ZonePerfect* Nutrition Co., No. 12-2907 SC,
   2012 U.S. Dist. LEXIS 183050, 2012 WL 6737800
    (N.D. Cal. Dec. 28, 2012)……………………………………………………17

*Connick v. Suzuki Motor Co., Ltd.*
   174 Ill.2d 482, 675 N.E.2d 584, 221 Ill. Dec. 389 (Ill. 1996)…………………………...15

*Continental X-Ray Corp. v. XRE*
   1995 U.S. Dist. LEXIS 14722, No. 93 C 3522 (N.D. Ill. 1995)…………………..…..18

*Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*
   409 Ill. App. 3d 1114, 957 N.E.2d 1174
    (Ill. App. Ct. 5th Dist. 2011)……………………………………………………21

*Davel Commc'n, Inc. v. Qwest Corp.*
   460 F.3d 1075 (9th Cir. 2006)……………………………………………………8

*DiLeo v. Ernst & Young*
    901 F.2d 624 (7th Cir. 1990)……………………………………………………21

*Forcellati v. Hyland's Inc.*
    876 F.Supp.2d 1155 (C.D. Cal 2012)……………………………………….……17

*Eike v. Allergan, Inc.*
    2014 U.S. Dist. LEXIS 34894 (D. Ill. 2014)……………………………………21

*Frye v. L'Oreal USA*
    Inc. 583 F. Supp. 2d 954 (N.D. Ill. 2008)……………………………………………16

*Gitson v. Trader Joe's Co.*
    No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917
    (N.D. Cal. Oct. 4, 2013)…………………………………………………………5, 9, 11

*Hood v. Wholesoy, No.*
    12-5550, 2013 U.S. Dist. LEXIS 97836, 2013 WL 3553979
    (N.D. Cal. July 12, 2013)……………………………………………………………4, 5

*Ivie v. Kraft Foods Global, Inc.*
    2013 U.S. Dist. LEXIS 25615 (N.D. cal. Feb. 25, 2013)………………………………3, 8

*Jamison v. First Credit Servs., Inc.*
    290 F.R.D. 92 (N.D. Ill. 2013)………………………………………….......2, 4, 5, 18

*Kane v. Chobani, Inc.*
    2014 U.S. Dist. LEXIS 22258 (N.D. Cal. Feb. 20, 2014)…………………………...10, 11

*Limberopoulos v. First Midwest Bank*
    No. 02 C 5008, 2004 U.S. Dist. LEXIS 4085 (N.D. Ill. Mar. 16, 2003)………………...15

*Luckey v. Baxter Healthcare Corp.*
    No. 95 C 509, 1996 U.S. Dist. LEXIS 6252 (N.D. Ill. May 8, 1996)………………......4, 5

*Lujan v. Defenders of Wildlife*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)………………………………15

*Morgan v. Wallaby Yogurt Co., Inc.*
    NO. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548
    (N.D. Cal. Mar. 13, 2014)……………………………………………...……6, 7, 8

*Muir v. Playtex Prods., LLC*
    2013 U.S. Dist. LEXIS 158797 (N.D. Ill. Nov. 6, 2013)…………………….................14

*Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*
    913 F. Supp. 1088 (N.D. Ill. 1995)……………………………………………………18

*Oshana v. Coca-Cola Co.*
    472 F.3d 506 (7th Cir. Ill. 2006)……………………………………………...9, 15

*Parker v. J.M. Smucker Co.*
    2013 U.S. Dis LEXIS 101371 (N.D. Cal. July 20, 2012)………………………..…17

*Payton v. Cnty of Kane*
    308 F.3d 673 (7th Cir.2002)…………………………………………………..17

*Quinn v. Walgreen Co.*
    2013 U.S. Dist LEXIS 112670 (S.D.N.Y. Aug 6, 2013)………………………………..16

*Reiter v. Cooper*
    507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)…………………………………8

*Reyes v. McDonald's Corp.*
    2006 U.S. Dist. LEXIS 81684 (N.D. Ill. Nov. 8, 2006) ………………………....10

*Ross v. Clover Stornetta Farms*
    2014 U.S. Dist. LEXIS 5408, (N.D. Cal. Jan. 14, 2014)…………...…………………3

*Ryan v. Chemlawn Corp.*
    935 F.2d 129 (7th Cir. 1991)……………………………………………………..4

*Samet v. Procter & Gamble Co.*
    No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (June 18, 2013)…………..5, 7

*Swearingen v. Amazon Preservation Parnters, Inc.*
    No. 13-cv-04402-WHO, 2014 U.S. Dist. LEXIS 36830
    (N.D. Cal. Mar. 18, 2014) …………………………………………………..6, 7

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*
    861 F. Supp. 2d 898 (N.D. Ill. 2012)……………………………………………21

*Turek v. General Mills, Inc.*
    662 F.3d 423 (7th Cir. Ill. 2011)………………………………..…………………20

*Tutoki v. Celebrezze*
    375 F.2d 105 (7th Cir. 1967). …………………………………………………5

*United States v. Western Pac. R.R. Co.*
    352 U.S. 59 (1957)…………………………………………………………...4

*Weiss v. Waterhouse Secs., Inc.*
    208 Ill. 2d 439 (Ill. 2004)…………………………………………………………...13

*Werdebaugh v. Blue Diamond Growers*
    No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178
    (N.D. Cal. Oct. 2, 2013)………………………………………………………………..7

*Wigod v. Wells Fargo Bank, N.A.*
    673 F.3d 547 (7th Cir. Ill. 2012)…………………………………………………………19

**STATUTES**

815 ILCS 505…………………………………………………………………...1, 2, 18, 20

21 U.S.C. § 343…………………………………………………………………..1, 3, 12

**OTHER AUTHORITIES**

21 C.F.R. § 10.115…………………………………………………………………...2, 7, 20

21 C.F.R. § 101.4……………………………………………………………………….1

21 C.F.R. § 101.60……………………………………………………………………11

21 CFR 102.5………………………………………………………………………...12, 14

21 C.F.R. § 168.130…………………………………………………………………….7

Fed. R. Civ. P. 9(b)…………………………………………………………………….21

Docket No. FDA-2009-D-0430, 79 Fed. Red. 12057,
    Notice Reopening Comment Period (Mar. 5, 2014)…………………………………2, 6, 7

Docket No. FDA-2009-D-0430, Guidance for Industry-Ingredients Declared as
    Evaporated Cane Juice-Draft Guidance (Oct. 7, 2009)…………………………...1, 12, 14

## INTRODUCTION

For various health reasons, many consumers prefer to not only know the sugar contents in their prospective food purchases, but also in the source(s) of those sugars. This additional information is oftentimes helpful in determining the possible nutritional benefit(s) stemming from the sugar's sources. The food industry is well aware of the fact that a substantial portion of the consuming public reacts negatively to words like "sugar" and "syrup" on food ingredient lists. Through the use of binding regulations, numerous warning letters, and FDA-issued guidance documents, the FDA has made it clear that use of the term "evaporated cane juice" ("ECJ") is false and misleading because it conveys the impression that the ingredient is "juice" instead of sugar or syrup. (*See* Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice," issued in Docket No. FDA-2009-D-0430, Guidance for Industry-Ingredients Declared as Evaporated Cane Juice-Draft Guidance (Oct. 7, 2009) ("Draft Guidance"). Since 2009, the FDA has consistently taken the position that use of the term "evaporated cane juice" on food ingredient labels is misleading because it is not the common or usual name of any ingredient, and because it is false and misleading in that it conceals the true nature of the ingredient. ECJ is also a refined sugar because in order to produce ECJ, the product must be boiled and refined, depleting its nutritional value. (*See* http://www.livestrong.com/article/392941-white-sugar-vs-organic-evaporated-cane-juice/).

The Federal Food, Drug, and Cosmetic Act (FDCA) and regulations promulgated thereunder, require that ingredients on food labels be identified by their "common or usual name." *See* 21 U.S.C. § 343(g) & (i), 21 C.F.R. § 101.4(a). If an ingredient is not defined by its common or usual name, the food is misbranded (*See Id.*). The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505, prohibits the use or employment of

1

any deception, misrepresentation, concealment, or suppression or omission of any material fact on consumers. (*See* 815 ILCS 505/2). Despite the laws requiring that ingredients be identified by their common and usual name, and despite the FDA's consistent insistence that "evaporated cane juice" is not the common or usual name for any ingredient (and that it is false and misleading), Defendant Kind, LLC ("Defendant") is among those manufacturers who have continued to list ECJ as an ingredient in order to mislead consumers.

Defendant's Motion to Dismiss erroneously challenges the existing authority on ECJ by insinuating that all FDA guidance documents (including warning letters), industry standards, and existing case law are no longer applicable because of the FDA's decision to re-open the comment period regarding its 2009 Draft Guidance on ECJ on March 5, 2014 (Docket No. FDA-2009-D-0430, 79 Fed. Red. 12057, Notice Reopening Comment Period (Mar. 5, 2014). Defendant over-emphasizes the legal impact of the FDA's decision to re-open the comment period, suggesting that the Draft Guidance has now been superseded by the notice issued on March 5, 2014. However, since the 2009 Draft Guidance has not actually been revoked or revised, it still provides the best understanding of the "agency's interpretation of or policy on a regulatory issue." 21 CFR 10.115(a). Contrary to Defendant's arguments, the Primary Jurisdiction Doctrine is not appropriate in instances where, as here, an administrative agency has simply requested comments on a petition. *See Jamison v. First Credit Servs., Inc.,* 290 F.R.D. (N.D. Ill. 2013).

Defendant advances a number of inconsistent and unpersuasive arguments to support its claim that the complaint should be dismissed under the doctrine of primary jurisdiction. It argues, for example, that the FDA is uniquely qualified to clarify what the common usage of cane syrup is, ignoring the fact that the FDA's notices, guidance documents, and general usage

of the term make it abundantly clear that evaporated cane juice's common use is as a sweetener. Defendant also argues that while the primary jurisdiction doctrine should apply due to the FDA's expertise, it simultaneously argues that the FDA's views should not guide the Court because of their inclusion in a draft notice. Existing regulations, case law, the FDA's guidance documents, and warning letters make it clear that the FDA considers use of the term evaporated cane juice to be false and misleading under 21 U.S.C. 343(a)(1). *Ivie v. Kraft Foods Global, Inc.,* 2013 U.S. Dist. LEXIS 25615, at *36 (N.D. cal. Feb. 25, 2013).

In order to demonstrate why it believes each claim fails as a matter of law, Defendant misconstrues Plaintiff's allegations. Plaintiff has properly alleged that Defendant's products are in fact mislabeled because they list evaporated cane juice as an ingredient and falsely claim to contain "no refined sugars" (*See* Class Action Complaint [ECF No. 1] ("CAC") ¶¶25-29). The FDA has *never* indicated that use of the term ECJ is permissible, but has made its current position clear: ECJ is a misleading ingredient. *See Ross v. Clover Stornetta Farms*, 2014 U.S. Dist. LEXIS 5408, at *38-39 (N.D. Cal. Jan. 14, 2014). Defendant knew of the FDA's position when it designed the packaging for its products and has continued to list ECJ as an ingredient in order to purposefully mislead its target audience of health-conscious consumers to believe ECJ is not a sugar and that its products contain no refined sugars.

## BACKGROUND

Plaintiff purchased Kind Healthy Grains Vanilla Blueberry Clusters with Flax Seeds on at least two separate occasions. (CAC ¶2). Defendant includes in the nutritional labeling of the Product, the ingredient evaporated cane juice, which was misleading to the Plaintiff and the Class Members because ECJ is simply a type of sugar (*See* CAC ¶3). Plaintiff is a health-conscious consumer who was looking for a healthy nutritional snack at the time of purchase of

3

the Product and was unaware that ECJ was actually just a sugar or syrup. Plaintiff would not have purchased the Product but for the misleading statements made by Defendant (CAC ¶5). Further, Defendant knows that the representations it makes on the labeling, promotional materials and to customers at the point of sale concerning its Products are inaccurate and untrue (CAC ¶ 56). Defendant erroneously suggests that, to satisfy applicable pleading requirements, Plaintiff must state precisely what she believed evaporated cane juice to be, if not sugar. To the contrary, Plaintiff is only required to allege a deceptive act or practice and has done so.

## ARGUMENT

### I. THE DOCTRINE OF PRIMARY JURISDICTION DOES NOT APPLY

The primary jurisdiction doctrine applies "where a claim that is originally cognizable in court '*requires* the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Luckey v. Baxter Healthcare Corp.*, No. 95 C 509, 1996 U.S. Dist. LEXIS 6252, *10 (N.D. Ill. May 8, 1996) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1957)) (emphasis added). "There is no fixed formula for invoking the primary jurisdiction doctrine," *Luckey*, 1996 U.S. Dist. LEXIS 6252, at 10-11 (quoting *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991)), but the doctrine is not "designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 98 (N.D. Ill. 2013) (quotation omitted).

#### A. The Majority of Courts Faced with This Exact Issue have Held the Doctrine Does Not Apply.

Defendant relies heavily on a California court's decision in *Hood v. Wholesoy,* No. 12-5550, 2013 U.S. Dist. LEXIS 97836, 2013 WL 3553979 (N.D. Cal. July 12, 2013), arguing that "[i]t is appropriate [for a court] to defer to the authority and expertise of the FDA to say what

4

the appropriate rules should be with respect to 'evaporated cane juice.'(*See* Def.'s Brief at 8-9). But *Hood* is a relative outlier. The majority of courts to consider the issue in ECJ cases have declined to apply the primary jurisdiction doctrine. *See*, *e.g.*, *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917, * (N.D. Cal. Oct. 4, 2013) ("the weight of authority in this District has declined to invoke the primary jurisdiction doctrine in cases nearly identical, if not identical, to this one"). Courts presiding over ECJ cases remain rightfully unconvinced that the FDA should have primary jurisdiction over all matters related to food labeling, holding that "[a]llegations of deceptive labeling do not require consultation of the expertise of the FDA[,] as every day courts decide whether conduct is misleading." *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, * (June 18, 2013) (quotation omitted). By contrast, the Seventh Circuit has applied the doctrine where an essential element of a case required showing that a drug would have been approved or exempted by the FDA, as district courts have "neither the facilities nor the expertise" to conduct the drug-approval process. *See*, *e.g.*, *Tutoki v. Celebrezze*, 375 F.2d 105, 107 (7th Cir. 1967).

Courts in this Circuit also recognize that the primary jurisdiction doctrine is not applicable under these circumstances. Indeed, although Defendant cites to cases from this Circuit for the broad policy considerations underlying a court's decision to invoke the primary jurisdiction doctrine, it conveniently ignores the facts of cases like *Jamison*, in which the court held that an agency's request for public comments that could potentially result in changes to the agency's position on an issue was "simply not enough" for the court to stay the action given that "the potential delay in th[e] case more than outweigh[ed] any theoretical benefit that might be achieved with an [agency] resolution on the issue." 290 F.R.D. 101. Notably, as in *Luckey*, the

FDA has not "come before this Court [or any other court presiding over an ECJ case] to assert any perceived administrative prerogative." 1996 U.S. Dist. LEXIS 6252 at *14.

### B. Defendant Reads Too Much Into the FDA's Decision to Re-Open the Comment Period on Its Draft Guidance.

Importantly, the FDA has not committed itself to modifying its Draft Guidance, which has stood unchanged since 2009, but has simply stated that, "[a]fter reviewing the comments received, [it] intend[s] to revise the draft guidance, *if appropriate,* and issue it in its final form. Notice of Reopening of Comment Period for Draft Guidance for Industry on Ingredients Declared as Evaporated Cane Juice, issued in Docket No. FDA-2009-D0430 and reprinted at 79 Fed. Reg. 12507-08 (Mar. 5, 2014) (emphasis added). It is entirely possible that the FDA will decide to take no further steps to finalize the Draft Guidance, which has stood unchanged since 2009, or that no significant revisions will be made. As the court in *Swearingen v. Amazon Preservation Parnters, Inc.*, No. 13-cv-04402-WHO, 2014 U.S. Dist. LEXIS 36830, *11 & n. 3 (N.D. Cal. Mar. 18, 2014) and *Morgan v. Wallaby Yogurt Co., Inc.*, NO. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548, *10 & n. 2 (N.D. Cal. Mar. 13, 2014) recently noted in decision refusing to stay or dismiss ECJ cases after the FDA issued its notice, "[i]t remains unclear when or if the FDA will conclusively resolve this issue . . . Lacking definitive guidance, this case will proceed apace."

Defendant over-emphasizes the legal importance of the FDA's recent decision to re-open the comment period on its 2009 Draft Guidance, erroneously suggesting that "the non-binding guidance has now been superseded by the Notice issued by FDA on March 5, 2014" (Def.'s Brief at footnote 1, pg. 1) and that decisions reached in other evaporated cane juice cases are no longer applicable or persuasive (*see* Def.'s Brief at footnote 3, pg. 9). Defendant provides no statutory or legal support, however, for its assertion that the 2009 Draft Guidance has been

*superseded.* Indeed, the 2009 Draft Guidance still provides the most reliable interpretation of the FDA's current position on evaporated cane juice.[1]  It is furthermore consistent with several warning letters the FDA has issued to producers cautioning them against using the term evaporated cane juice, some of which were issued after the Draft Guidance was published. *See Swearingen v. Yucatan Foods, L.P.,* 2014 U.S. Dist. LEXIS 18094, at *7 (N.D. Cal. Feb. 7, 2014) .

### C. Re-Opening of the Comment Period Does Nothing to Diminish the Persuasive Value of Existing Decisions Holding the Primary Jurisdiction Doctrine Does Not Apply.

The FDA's recent announcement furthermore has no bearing on the persuasiveness of courts' decisions declining to apply the primary jurisdiction doctrine because—as those courts were aware—the FDA has *always* had the authority to review, revise, or withdraw guidance documents as it deems necessary. (*See* 21 CFR 10.115.)  The plaintiffs in those cases, as here, did not rely exclusively on the draft guidance, but on other binding regulations.  In *Samet*, for example, the court noted that, "[w]hile it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice an ingredient," as 21 C.F.R. 168.130 requires that "[t]he common or usual name of a food" shall be used to identify or describe it "in as simple and direct terms as possible."  2013 U.S. Dist. LEXIS 86432, at * 28-29.  In that case, as here, the plaintiff alleged the defendant's product contained sugar, which should be cited by its common or usual name under binding FDA

---

[1] *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (an agency's interpretation of its own regulation, even if set forth in an informal document, is controlling unless plainly erroneous or inconsistent with the regulations."); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178, *40 n.4 (N.D. Cal. Oct. 2, 2013) ("[a]s the FDA has never spoken on the specific issue of the use of the term 'evaporated cane juice' *except* to state that it views the term as violating the FDA regulations, the Court cannot conclude that the FDA's position on the matter is 'unsettled.'  Accordingly, the Court declines to follow *Hood*'s reasoning and conclusions."); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959, *30 (N.D. Cal. Oct. 4, 2013) ("[a defendant] cannot credibly argue that the FDA has such 'expertise' that the Court must defer to it under the primary jurisdiction doctrine and then turn around and suggest that the FDA's views, *even if tentative*, should not guide the Court in determining whether [the defendant] may have violated the law.") (emphasis added).

regulations, and the court found that this was "sufficient to proceed *no matter what final guidance may be issued by the agency.*" *Id.* at *29 (emphasis added). The same is true here, where "[t]he FDA's 2009 industry guidance statement is *relevant* to the issue of whether [the Defendant's] labels could be deceptive or misleading to a reasonable consumer, and there is no risk of undermining the FDA's rulemaking expertise in allowing a fact finder to make this determination." *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, *36 (N.D. Cal. Feb. 25, 2013).

Like the unsuccessful defendants in other ECJ cases,[2] Defendant argues on the one hand that courts cannot rely on the Draft Guidance because it is not final but asks this Court on the other hand to stay or dismiss this action in case another version of the non-binding guidance is released at some unknown future date. This argument is simply too tenuous to invoke the narrow grounds under which the primary jurisdiction doctrine has been found to apply. Should the Court find the primary jurisdiction does apply, Plaintiffs respectfully request a stay of proceedings rather than dismissal without prejudice.[3]

## II. Plaintiff's Claims Do Not Fail as A Matter of Law

### A. Plaintiff Clearly Alleges Deception and Reliance

This jurisdiction has recognized that to prevail on a claim for damages under the ICFA, a Plaintiff must demonstrate "(1) a deceptive act or practice; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [defendant] intended [plaintiff] and

---

[2] *See Morgan*, 2013 U.S. Dist. LEXIS 144959 at *30 (noting the defendant could not "credibly argue that the FDA has such 'expertise' that the Court must defer to it under the primary jurisdiction doctrine and then turn around and suggest that the FDA's views, even if tentative, should not guide the Court in determining whether [the defendant may have violated the law").

[3] "Whether to stay or dismiss without prejudice a case within an administrative agency's primary jurisdiction is a decision within the discretion of the district court." *Davel Commc'n, Inc. v. Qwest Corp*., 460 F.3d 1075, 1091 (9th Cir. 2006), *citing Reiter v. Cooper*, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception." *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. Ill. 2006). Here, Defendant mislabeled ECJ in order to target health-conscious consumers and lead them to believe that its products are in fact, lower in sugar.

### 1. Plaintiff Does Not Allege that She Believed the Product to be Sugar Free

Defendant over simplifies the case at hand by failing to address the key differences between *Gitson, Avoy,* and Plaintiff's complaint. In *Avoy*, Plaintiff alleges that she was under the impression that "the products did not contain sugar." *See Avoy v. Turtle Mt., LLC*, 2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014). In *Gitson*, Plaintiff failed to express adequate concerns about *added sugar* in the complaint. *See Gitson v. Trader Joe's Co.,* 2013 U.S. Dist. LEXIS 144917 (N.D. Cal. Oct. 4, 2013). In the current case, Plaintiff precisely notes that the products were mislabeled with respect to their failure to disclose ingredients by their common or usual name, improper characterization of ingredients, and their claim that the product contained "no refined sugars." (*See* Complaint ¶¶ 25, 26, 29, 31, 32, 35). Plaintiff is not simply stating that she thought the Product was "sugar free." Plaintiff's complaint precisely alleges why the Products are mislabeled in several respects.

### 2. *Kane* Is Not Analogous Because Plaintiff Sufficiently Alleges That Several Aspects of the Products Are Mislabeled.

Plaintiff has pled her claim with sufficient specificity so as to survive a motion to dismiss. Defendant's suggestion that Plaintiff must allege a plausible alternative definition of the term ECJ (*See* Def.'s Brief at 15) in order to succeed in her claim would require Plaintiff to add a pleading requirement that simply has never been recognized by this jurisdiction and has rarely

been recognized in other jurisdictions[4]. Courts have determined that Plaintiffs plead their Illinois Consumer Fraud Act claim with sufficient specificity to survive a motion to dismiss when Plaintiff alleged:

> (1) the date on which they discovered the alleged deception; (2) they read and relied upon the nutrition information posted by McDonald's prior to consuming any McDonald's products; (3) they would have moderated their consumption had they known about the actual information; and (4) they were damaged by the realization that they had consumed products that contained higher trans fats, fats, and calories than advertised. Plaintiffs may not be able to sustain their burden of proof that they suffered actual damages as a result of McDonald's alleged violation, but Plaintiffs have pled the element of damages to survive a motion to dismiss."

*Reyes v. McDonald's Corp.*, 2006 U.S. Dist. LEXIS 81684 (N.D. Ill. Nov. 8, 2006) (noting that "Plaintiffs may not be able to sustain their burden of proof that they suffered actual damages as a result of [the defendant's] alleged violation, but Plaintiffs have plead the element of damages to survive a motion to dismiss").  Similar to the Court in *Reyes*, Plaintiff has accurately and sufficiently alleged all of these facts, including that she would have moderated her consumption had she been aware that evaporated cane juice was actually just a sugar or syrup and that she would not have purchased the product had she known that Defendant's statements were misleading (*See* Complaint ¶¶ 5, 6). It is unprecedented and unnecessary at this stage in the litigation to require Plaintiff to further elaborate on what she believed ECJ to be in the pleadings.[5]

---

[4] On a motion to dismiss Plaintiff's Third Amended Complaint the Court finally noted that "Absent some factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is simply not plausible. *Kane v. Chobani, Inc.,* 2014 U.S. Dist. LEXIS 22258, 29-30 (N.D. Cal. Feb. 20, 2014). Here, Plaintiff is not merely contending whether or not all sugars were natural.

[5] Defendant also argues that they did not intend for consumers to rely on the ECJ ingredient as "some type of indication that the products at issue contained "no added sugar" when Kind disclosed "sugar" as an ingredient in at least one of its "clusters" products. (Def.'s Brief at pg. 16, footnote 9). Regardless of the ingredients listed, Defendant still fails to address: why the majority of KIND products did not list sugar as an ingredient; why KIND is still mislabeling ECJ in accordance to industry standards established by the FDA through guidance documents,

The case at hand is further distinguished from the court's decision in *Kane*, which notes that "absent *some* factual allegation concerning what [plaintiff] believed ECJ to be if not a form of sugar or a juice containing some form of sugar," any assertion that plaintiff was somehow deceived into believing the products were free of added sugar "is simply not plausible" (Def.'s Brief at 15)(quoting *Kane*). Here, Plaintiff is not simply alleging that she believed the Product to be *free* of added sugar, she is alleging (*inter alia*) that the Product is mislabeled and misleading in several other respects.[6]

### 3. KIND's Labeling is Deceptive to a "Reasonable Consumer"

Defendant's motion fails to address several major issues regarding their purposeful mislabeling. Defendant never addresses why the majority of their products fail to list sugar as an ingredient; why KIND is still utilizing ECJ as an ingredient when the FDA, industry standards, and case law have made it clear that the name of the ingredient is misleading and; why Defendant continues to go against industry standards by listing ECJ as an ingredient while purporting that its Products contain no "Refined Sugars" (Complaint ¶35); and no "secret ingredients" (Complaint ¶57).

### (a) Defendant Misrepresents The Sugar Source in The Clusters Products In Order to Appeal To Consumers.

Defendant repeatedly argues that "no reasonable consumer could find the ECJ labeling on the Clusters products to be misleading because of the nutrition facts panel," relying on the Court's decision in *Gitson* to illustrate that Plaintiff should have been aware of the fact that the product contained sugar. (*See* Def.'s Brief at 17). As previously addressed, Plaintiff is not

---

regulations, and warning letters; and other mislabeling claims set forth in the Complaint.

[6] Defendant's reference to 101.60(c)(2)(ii) makes it even more clear that the KIND Products at issue were mislabeled. The regulation, when read in its full context, places limitations on when products may make sugar content claims. *See* 21 C.F.R. § 101.60(c).

alleging that she believed the product to be *sugar free,* or even free of *added sugar*, instead, Plaintiff is alleging that the use of ECJ as a listed ingredient in the product causes the Product to be mislabeled and misleading in its entirety. (*See* Complaint ¶ ¶ 3, 4, 5, 6, 7, 8, 22-39).

Defendant argues that Plaintiff's claim fails as a matter of law because she should have been aware that the product contained sugar because of the sugar content in the "Nutrition Facts section of each product label." (Def.'s Brief at 17). The FDA articulated that the inability to properly account for evaporated cane juice's use in product labeling is especially problematic because the "FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e. that the ingredients are sugars or syrups as required by 21 CFR 102.5)." "Draft Guidance for Industry: Ingredients Declared as evaporated Cane Juice," issued in Docket No. FDA-2009-D-0430 (Oct.7, 2009). Defendant never addresses the ambiguity raised by the use of ECJ, they merely reiterate that Plaintiff should have known there was sugar in the product (*See* Def.'s Brief 13-19). This argument is not only redundant, it is meritless because Plaintiff *has never alleged* that she believed the product to be *sugar free*. Instead, she alleged that as a health-conscious consumer, she did not know the product was misbranded. (Complaint ¶¶ 5, 6). In the absence of any evidence or information to the contrary, it is possible that Defendant purposefully used ECJ in order to market its products toward health conscious consumers like Plaintiff. (Complaint ¶ 20). The FDA's current position is that ECJ is a misleading ingredient.

### (b)     Evaporated Cane Juice Is A Refined Sugar.

Again, Defendant attempts to manufacture an additional pleading requirement for Plaintiff, one that is unprecedented and without judicial merit. In a consumer protection lawsuit,

12

Plaintiff does not need to address the scientific details of her claim by pleading precisely what she understands "No Refined Sugars" to mean (Def.'s Brief at 18). Pleadings are sufficient when "the factual allegations are sufficiently broad in scope plead the possible existence of a class action claim." *Weiss v. Waterhouse Secs., Inc.*, 208 Ill. 2d 439, 453-454 (Ill. 2004). The complaint establishes that "Although evaporated Cane Juice is less refined than regular white sugar, *it is nonetheless refined*." (Complaint ¶ 38) (emphasis added). This, combined with Plaintiff's other allegations with respect to ECJ (*see* Complaint ¶¶ 37-29), is sufficient to state a claim for why Defendant's products, marketed as containing "no refined sugars," are deceptive to a reasonable consumer.

Although the article relied upon by both parties establishes that ECJ is in fact, a refined sugar[7], Defendant's arguments make clear that this is a disputed issue of fact not properly resolved on a motion to dismiss.

### (c) Defendant's Use of ECJ As An Ingredient is Misleading.

Plaintiff notes that Defendant's Products are misleading because on their website and labeling Defendant purports to use "ingredients you can see and pronounce" and "no secret ingredients." (Complaint ¶ 23). While Plaintiff maintains that these phrases are misleading, allegations concerning them are not necessary to establish an independent cause of action, but are rather included to support Plaintiff's allegations that Defendant markets its products to

---

[7] Similar to conventional refined sugar, in order to produce ECJ, the product must be boiled and refined, a process which greatly depletes any nutritional value of the product as well. ECJ contains some negligible amounts of nutrients that regular refined sugar does not. evaporated cane juice "is *less refined*, so it remains a light tan color and retains some of the nutrients found in sugar cane juice." (Complaint ¶38) (*citing*: http://www.livestrong.com/article/392941-white-sugar-vs-organic-evaporated-cane-juice/) (emphasis added) and it "is processed by boiling to evaporate most of the water in the juice." *Id.* Similarly, the article notes that refined sugar is also "liquefied and processed to remove the remaining color and anything that isn't pure sugar." *Id.* Defendant improperly infers that simply because ECJ is not centrifuged after the removal of the liquid (as is the case with conventional refined sugar), ECJ is not refined. (*See Id.*) *See also* Def.'s Brief at 19.

health-conscious consumers who care about the contents of the foods they purchase. (Complaint ¶ 23).

Puffing typically consists of "subjective descriptions relating to quality," such as "high quality," "perfect," and "best") *Muir v. Playtex Prods*., LLC, 2013 U.S. Dist. LEXIS 158797, 16-17 (N.D. Ill. Nov. 6, 2013) (citing *Barbara's Sales, Inc. v. Intel Corp*., 227 Ill. 2d 45, 879 N.E.2d 910, 926, 316 Ill. Dec. 522 (Ill. 2007) (Internal citations omitted). Defendant's claim to utilize "no hidden ingredients" is objectively false because despite FDA guidance and numerous industry warnings that caution against they use of ECJ, they continue to "hide" their sweeteners and sugars through their use of ECJ. The FDA's position that ECJ "falsely suggests that the sweeteners are juice" and that "the common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a)). FDA's "Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice," issued in Docket No. FDA-2009-D-0430 (Oct.7, 2009). All existing guidance and regulations on ECJ makes it clear that ECJ is a conveniently named sweetener, posing as an ingredient that sounds more appealing to health conscious consumers. Under the circumstances, Defendant's claims cannot be construed as mere puffery.

### 4. Plaintiff's Unjust Enrichment, Fraud, and ICFA Claims Should Not Be Dismissed Because Plaintiff Has Sufficiently Pled Deception.

To establish deceptive practices in violation of the Consumer Fraud Act, a plaintiff "must show a misrepresentation or omission relating to a material fact. An omission of material fact or a material misrepresentation constitutes a deceptive act under Illinois law. A misrepresentation or omission is material if the plaintiff would have acted differently had she been aware of it, or if

it concerned the type of information upon which she would be expected to rely in making her decision to act. *Oshana v. Coca-Cola Co.,* 2005 U.S. Dist. LEXIS 14184, 23-24 (N.D. Ill. July 13, 2005) (citing *Limberopoulos v. First Midwest Bank,* No. 02 C 5008, 2004 U.S. Dist. LEXIS 4085 at * 4 (N.D. Ill. Mar. 16, 2003)) and *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 504-05, 675 N.E.2d 584, 595, 221 Ill. Dec. 389 (Ill. 1996)) (Internal citations omitted).

Plaintiff has properly alleged deception by alleging (*inter alia*) that "Defendant was aware or should have been aware of the guidance and regulations concerning ECJ" (Complaint ¶ 28); "Defendant nonetheless unlawfully listed 'evaporated cane juice' as an ingredient on its Products, when it actually contained sugar(s) and/or syrup(s)" (Complaint ¶ 29); that "Plaintiff is a health-conscious consumer who was looking for a healthy nutritional snack at the time of purchase of the Product and was unaware that evaporated cane juice was actually just a sugar or syrup" (Complaint ¶ 5); and that "Plaintiff would not have purchased the Product but for the misleading statements made by Defendant." (Complaint ¶ 5).

### B. Plaintiff Has Established Standing

In order to establish Article III standing, a Plaintiff must demonstrate, injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). With respect to IFCA claims, "A financial injury creates standing." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. Ill. 2011).

### 1. Plaintiff Properly Alleges Injury and Actual Damages

Plaintiff alleged that she is a "health-conscious consumer who was looking for a healthy nutritional snack at the time of purchase of the Product and was unaware that evaporated cane juice was actually just a sugar or a syrup." (Complaint ¶5). In a case involving similar ICFA claims, a court found that "the plaintiff was injured because it would not have purchased the

15

[product] had it known that it was municipal tap water instead of 100% natural spring water."

*See Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 2014 U.S. Dist. LEXIS 16871, 8-9

(N.D. Ill. Feb. 11, 2014 (*See also In re Aqua Dots Products Liability Litigation*, 654 F.3d 748,

751 (7th Cir. 2011)). The injury, which was financial in nature, was complete at the time of

purchase, and the plaintiff allegedly paid more than it otherwise would have for the water. The

court held that "[t]hese allegations suffice to allege an injury and causation for purposes of

Article III standing." *Id.*

Defendant erroneously cites to *Frye v. L'Oreal USA, Inc.* 583 F. Supp. 2d 954 (N.D. Ill.

2008) in support of its argument that Plaintiff lacks standing. However, the court in *Frye* never

addressed the issue of standing, but rather addressed the issue of damages, finding that the

complaint should be dismissed because there was no allegation of any economic damage in the

complaint. *See Frye v. L'Oreal USA, Inc.,* 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008).  In the

current case, Plaintiff has explicitly alleged economic losses and harm as a direct result of

Defendant's misrepresentations (*See* Complaint ¶ ¶ 59-62)[8].

### 2.    Plaintiff Has Standing to Sue On All Products Because All of the Products at Issue Are Substantially Similar

Defendant asserts that "Plaintiff lacks standing to pursue claims related to products not

purchased and products not relied upon." (Def.'s Brief at 21). However, in cases such as this,

where the products and the representations at issue are substantially similar, the majority and

better reasoned approach is to defer the issue of standing until the class certification stage. *See*

*Quinn v. Walgreen Co.,* 2013 U.S. Dist LEXIS 112670, *15-16 (S.D.N.Y. Aug 6, 2013) ("The

---

[8] Defendant improperly infers that because Plaintiff alleges that using ECJ as an ingredient violates the FDA's labeling regulations, then Illinois consumers would have a cause of action for any product sold in violation of any state of federal law. Plaintiff is not alleging that *any* consumer may bring a suit any time a law is violated. Plaintiff properly defines the prospective class as only consumers who purchased Defendant's products at issue (Complaint ¶ 46).

majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar") (*quoting Brown v. Hain Celestial Grp., Inc., 913 F.Supp.2d 881, 890* (N.D. 2012). *See also Forcellati v. Hyland's Inc.,* 876 F.Supp.2d 1155, 1161 (C.D.Cal 2012) (Denying Defendant's motion to dismiss because the "argument" is better taken under the lens of typicality or adequacy of representation [under Rule 23], rather than standing").

Under the majority approach, and for purposes of a ruling on a motion to dismiss, Plaintiff has standing to sue on behalf of a putative class of consumers of any of the products in the product line because the Complaint alleges that all of the products and the representations at issue are substantially similar. *See Brown* 913 F. Supp 2d at 881 ("substantial similarities" found in cases where misrepresentations concerning…the nature of the product lines were identical"). In order to determine what constitutes the "nature of the product lines," courts have considered factors such as "whether the products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Parker v. J.M. Smucker Co.,* 2013 U.S. Dis LEXIS 101371 (N.D. Cal. July 20, 2012); see also *Colucci v. ZonePerfect* Nutrition Co., No. 12-2907 SC, 2012 U.S. Dist. LEXIS 183050, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012). As is the case here, Plaintiff is alleging that "Defendant uses this exact misleading sales and labeling tactic for the six products at issue (*See* Complaint ¶ ¶ 5, 6).

In *Payton v. Cnty of Kane*, 308 F.3d 673 (7th Cir.2002) the court held that a class action should not be rejected in a case against 19 counties for the practice of using unauthorized "bail fees." The court determined that standing was established so long as *someone in the class* was

injured by one of the counties. *See id.* (emphasis added). Similarly, based on the identical ingredient present in all products, and the similar misrepresentations across the Product Line, Plaintiff has sufficiently alleged standing under Article III the IFCA.

### 3. Plaintiff Alleges Facts Sufficient To Establish Standing for Non-Illinois Sales.

The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). *In Jamison v. Summer Infant (USA), Inc.,* 778 F. Supp. 2d 900 (N.D. Ill. 2011), The court determined that because the defendants marketed and sold their products in Illinois, the ICFA applied to them even though their principal place of business was outside of Illinois because they were engaged in "trade or commerce directly or indirectly affecting the people of [the State of Illinois]." *In Jamison v. Summer Infant (USA), Inc.,* 778 F. Supp. 2d 900, 910 (N.D. Ill. 2011). Defendant's contention that Plaintiff lacks standing because the ICFA is limited in geographic scope is an argument that has been rejected by this jurisdiction on several occasions. *See Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088, 1140 (N.D. Ill. 1995) ("This Court believes that the Illinois Consumer Fraud Act, although intended to protect Illinois consumers, does not contain a geographic limitation"); *see also Continental X-Ray Corp. v. XRE*, 1995 U.S. Dist. LEXIS 14722,, No. 93 C 3522 n.1 (N.D. Ill. 1995) (same).[9]

---

[9] While the trade or commerce provision of the ICFA "has been interpreted by courts in a variety of ways," *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 181 (Ill. 2005), the General Assembly has stated that the Consumer Fraud Act "shall be liberally construed to effect" its purposes. 815 ILCS 505/11a (West 1998). Although Plaintiff has properly alleged that Illinois substantive law should apply (See Complaint ¶¶14-18), "each case must be decided on its own facts." *Avery*, 216 Ill. 2d at 187. Any questions of fact concerning the application of the ICFA to out-of-state Plaintiffs would best be addressed after the parties have been allowed time to conduct reasonable and diligent discovery.

### C. Preemption

#### 1. Plaintiff's Claim is Not Impliedly Preempted

It is clear that Plaintiff's claim could exist "independent of the FDCA." (Def.'s Brief at 22). The Seventh Circuit has consistently held that "claims are not . . . preempted by federal law to the extent they are based on defendants' violations of federal law." *See Bausch v. Stryker Corp.*, 630 F.3d 546, 556 (7th Cir. 2010) (*citing Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 579-580 (7th Cir. Ill. 2012)).[10] In *Bausch*, the court went onto note that "[t]he evidence showing a violation of federal law shows that the device is adulterated and goes a long way toward showing that the manufacturer breached a duty under state law." *Bausch v. Stryker Corp.,* 630 F.3d 546, 557 (7th Cir. Ill. 2010). Here, Plaintiff is bringing a claim for conduct that violates the ICFA by misleading consumers through the inclusion of ECJ in product ingredient lists (*See* Complaint ¶ ¶ 3,7). Plaintiff "does not attempt to enforce a private right of action under the FDCA or the ILCS, nor does Plaintiff wish to mandate labeling requirements which are inconsistent with the Federal law, rather Plaintiff cites to these regulations to show Defendant's misleading and illegal conduct regarding the use of the term 'Evaporated Cane Juice.'" (Complaint ¶ 45). While Plaintiff's claim could exist independent of Federal regulations and authority, the authorities and regulations are cited to as evidence and support in demonstrating that the products were in fact, mislabeled. (*See* Complaint ¶ ¶ 6, 24-27, 32, 41-45, 62).

#### 2. Plaintiff's Claims Are Not Expressly Preempted

Defendant's argument is based upon the hypothetical assumption that Plaintiff is or will be seeking to impose additional labeling requirements or disclaimers upon Defendant above and

---

[10] Defendant's interpretation of *Bausch* does not apply to the current case. In *Bausch,* the Court specifically notes that the 8th Circuit in the *Medtronic* case was interpreting the case of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001), which did not apply because, the plaintiffs claimed that the manufacturer had defrauded the federal agency and they were not claiming the breach of a recognized state-law duty. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. Ill. 2010).

beyond those required by Federal law. That however, is not the case here. Unlike the plaintiff in *Turek,* here Plaintiff is not seeking to impose any additional disclosure requirements on the Defendant. (*See Turek v. General Mills, Inc.,* 662 F.3d 423, 427 (7th Cir. Ill. 2011) (holding that Federal claims were barred because the disclaimers the plaintiff wanted added to the labeling of the products were not identical to labeling requirements imposed by Federal law). Plaintiff is alleging that Defendant's conduct violates the ICFA because Defendant intentionally misrepresented its products by listing ECJ as an ingredient, despite numerous FDA warnings and knowledge of the FDA's position that ECJ is a misleading ingredient, and despite knowing that ECJ is not really a juice, as that term is defined by the FDA. (*See* Complaint ¶ ¶ 7-24). Plaintiff's Claims are not expressly preempted because Plaintiff does not seek to establish any "new" requirements. (*See* Def.'s Brief at 23-24). Plaintiff cites to and utilizes Federal law in order to demonstrate that her claims are supported by and consistent with Federal regulations and authority.[11]

> **(a)** **Plaintiff's Reliance on the Draft, Non-Binding Guidance Is Not Expressly Preempted Because Plaintiff Only Relies on The FDA Guidance to Show Defendant's Misleading and Illegal Conduct.**

Plaintiff has reiterated that all parties are aware of the fact that the FDA's 2009 Guidance is not binding. However, the FDA has made it clear that guidance documents "describe the agency's interpretation of or policy on a regulatory issue." 21 CFR 10.115(b). Plaintiff is not seeking to enforce the guidance as though it was a law, nor is plaintiff seeking to "mandate labeling requirements which are inconsistent with Federal Law." (Complaint ¶45).  Since "The evidence showing a violation of federal law…goes a long way toward showing that the [defendant] breached a duty under state law" *Bausch,* 630 F.3d 546, 557 (7th Cir. Ill. 2010),

20

Plaintiff cites to Federal regulations and guidance to demonstrate Defendant's misleading and illegal conduct regarding the use of the term evaporated cane juice.

**(b)     Plaintiff Is Not Seeking to Impose Additional Disclosure Requirements.**

As previously addressed, Plaintiff is not seeking to impose any additional disclosure requirements, including any additional requirements with respect to the "amount of added sugar." (Def.'s Brief at 24). While Plaintiff is alleging that Defendant's use of the statement "No Refined Sugars" is misleading, how evaporated cane juice compares to regular, refined sugar creates issues of fact that are not properly resolved at the motion to dismiss stage.[12]

**D.     The Complaint Complies With Rule 9(b)**

To adequately plead a private cause of action under the ICFA, a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception. *Thrasher-Lyon v. Ill. Farmers Ins. Co*., 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (quoting *Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co*., 409 Ill. App. 3d 1114, 957 N.E.2d 1174, 1181 (Ill. App. Ct. 5th Dist. 2011) (citations omitted). Furthermore, an ICFA action must be pled "with the same particularity and specificity as that required under common law fraud. Therefore, a plaintiff "must allege with particularity the 'who, what, when, where, and how' of the fraud or misrepresentation." *Thrasher* 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

---

[12] When there remain questions of fact that yet to be determined, the record needs to be further developed. When "plaintiffs have provided defendants with sufficient notice of a plausible claim" they should survive a motion to dismiss. *See Eike v. Allergan*, *Inc*., 2014 U.S. Dist. LEXIS 34894 (D. Ill. 2014).

Plaintiff's allegations more than adequately satisfies the Rule 9(b) requirements. They concisely characterize Defendants' deceptive practice of listing ECJ as an ingredient and that Defendant was aware that listing evaporated cane juice as an ingredient was misleading (Complaint ¶ ¶ 3, 28-29). Plaintiff indicates that Defendant intended for consumers to rely on the deception by stating that as part of their marketing strategy, Defendant intended that Plaintiff rely upon Defendant's representations (Complaint  ¶ 55). Plaintiff also properly alleges that the deception occurred within the stream of commerce (Complaint ¶ ¶12, 70, 72, 73); and that Plaintiffs have suffered damages that were proximately caused by Defendant's deception. (Complaint ¶ ¶ 68, 78, 79, 82).

Defendant's interpretation of Rule(9)(b) is overly restrictive and contrary to the purpose of the Rule. Contrary to Defendant's arguments, Plaintiff is not required to identify specific details surrounding her purchase of the product such as precisely what she thought evaporated cane juice was, when she visited the website, or how the website content relates to the product she purchased (*See* Def.'s Brief at pg. 25). Defendant is essentially suggesting that Plaintiff must plead highly specific facts regarding her understanding of the scientific composition of evaporated cane juice in order to maintain her claim. While scientific studies and findings of fact regarding the actual chemical composition of evaporated cane juice will undoubtedly be an important part of this litigation, questions surrounding scientific efficacy are best left for discovery and expert testimony to occur throughout the course of this litigation.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

22

Dated: March 31, 2014                    RESPECTFULLY SUBMITTED,

                                          By: /s/  Nick Suciu III
                                          Nick Suciu III (*Admitted Pro Hac Vice*)
                                          Michigan Bar Number P72052
                                          Oliver Law Group, PC
                                          950 West University Dr., Suite 200
                                          Rochester, MI 48307
                                          Telephone: 248-327-6556
                                          Facsimile:  248-436-3385
                                          Email: Nsuciu@oliverlg.com

                                          By: /s/ Jordan L. Chaikin
                                          Jordan L. Chaikin (*Admitted Pro Hac Vice*)
                                          Florida Bar Number 0878421
                                          Parker Waichman LLP
                                          3301 Bonita Beach Road, Suite 101
                                          Bonita Springs, FL 34134
                                          Telephone: 239-390-1000
                                          Facsimile: 239-390-0055
                                          Email: jchaikin@yourlawyer.com

                                          *Counsel for Plaintiff Rochelle Ibarrola*

## **CERTIFICATE OF SERVICE**

I certify that on March 31, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ Nick Suciu III_____
Nick Suciu III
Michigan Bar Number P72052
Oliver Law Group, PC
950 West University Dr., Suite 200
Rochester, MI 48307

1