**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROCHELLE IBARROLA, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Civil Action No. 3:13-cv-50377 |
| Plaintiff, | ) ) | |
| | ) | District Judge Sara L. Ellis |
| v. | ) ) | |
| | ) | Magistrate Judge |
| | ) | Sidney L. Schenkier |
| KIND, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Nick Suciu, III (*pro hac vice*)
Barbat, Mansour & Suciu PLLC
434 West Alexandrine, Suite 100
Detroit, MI 48201
Telephone: 313-303-3472
Facsimile: 248-698-8634
Email: nicksuciu@bmslawyers.com

Edward A. Wallace
Dawn M. Goulet
Wexler Wallace, LLP
55 W. Monroe St., Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
Facsimile: 312-346-0022
Email: eaw@wexlerwallace.com
Email: dmg@wexlerwallace.com

Jordan L. Chaikin (*pro hac vice*)
Parker Waichman LLP
27300 Riverview Center Blvd, Suite 103
Bonita Springs, FL 34134
Telephone: 239-390-1000
Facsimile: 239-390-0055
Email: jchaikin@yourlawyer.com

Eric D. Holland (*pro hac vice*)
R. Seth Crompton (*pro hac vice*)
Holland, Groves, Schneller
& Stolze, LLC
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com
Email: scrompton @allfela.com

*Counsel for Plaintiff ROCHELLE IBARROLA*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

ARGUMENT .................................................................................................................. 6

I.    PLAINTIFF PLAUSIBLY ALLEGES A CLAIM FOR RELIEF. ............................ 6

    A.   Plaintiff Plausibly Alleges Deception and Reliance. ............................................ 7

         1.   Plaintiff Offers a Plausible Interpretation of "No Refined Sugars." ............ 7

         2.   Plaintiff Alleges Why ECJ and Molasses Are "Refined" Sugars. ............. 11

    B.   KIND's Labeling Is Deceptive To A "Reasonable Consumer." ........................ 12

         1.   Consumers Know That There Are Unrefined Sugars Available As Food
             Ingredients. .............................................................................................. 12

         2.   Plaintiff Never Alleges She Was Misled By The Claimed Sugar Content. 13

II.   PLAINTIFF ALLEGES STANDING UNDER ARTICLE III AND STATE LAW. 15

    A.   Plaintiff Plausibly Alleges Injury And Actual Damages. ................................... 15

         1.   A Claim Under The ICFA Has Been Established ....................................... 15

         2.   Plaintiff Has Established Observable Economic Consequences ................. 16

         3.   Plaintiff's Comparison Products Support Her Injury Allegations ............. 17

    B.   Plaintiff Has Standing To Sue For Non-Illinois Sales. ...................................... 19

III.  PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED UNDER THE
      PRIMARY JURISDITCTION DOCTRINE. ........................................................... 20

    A.   The Primary Jurisdiction Doctrine Does Not Apply to Plaintiff's Claims. ........ 20

    B.   The Supreme Court's Recent Decision in *POM Wonderful* Does Not Support
         Dismissal of This Case on Primary Jurisdiction Grounds. ................................. 22

IV.  THE FAC MEETS FEDERAL PLEADING STANDARDS. .................................. 23

    A.   The FAC Does Not Violate Rule 9(b). ............................................................... 23

    B.   The Express Warranty Claim Does Not Fail As A Matter Of Law ................... 24

V.   DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD NOT BE WITH PREJUDICE.
      ......................................................................................................................... 25

CONCLUSION ............................................................................................................. 25

## **TABLE OF AUTHORITIES**

### Cases

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100 (Ill. 2005) ........................................................................... 19

*Avoy v. Turtle Mountain, LLC*,
  2014 WL 587173, at *5 (N.D. Cal. Feb. 11, 2014) ..................................... 6

*Barbara Sales, Inc. v. Intel Corp.*,
  879 N.E. 2d 910, 917 (Ill. 2007) ................................................................. 9

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir., 2001) ................................................................... 14

*Chicago Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*,
  2014 U.S. Dist. LEXIS 16871 (N.D. Ill. Feb. 11, 2014) ........................... 17

*Connick v. Suzuki Motor Co.*,
  675 N.E.2d 584 (Ill. 1996) ........................................................................ 16

*Continental X-Ray Corp. v. XRE*,
  1995 U.S. Dist. LEXIS 14722 (N.D. Ill. 1995) .......................................... 19

*Coryell v. Lombard Lincoln-Mercury Merkur*,
  544 N.E.2d 1154 (Ill. App. Ct. 2d Dist. 1989)........................................... 24

*Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*,
  957 N.E.2d 1174 (Ill. App. Ct. 5th Dist. 2011) ......................................... 23

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) .................................................................... 23

*Dubey v. Pub. Storage, Inc.*,
  395 Ill. App. 3d 342 (Ill. App. Ct. 2009) ................................................... 16

*Figy v. Frito-Lay N. Am., Inc.*,
  2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) ........................................... 11

*Frye v. L'Oreal USA, Inc.*,
  583 F. Supp. 2d 954 (N.D. Ill. 2008) ........................................................ 15

*Garcia v. City of Chicago*,
  24 F.3d 966 (7th Cir. 1994) ...................................................................... 25

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) .................................................................. 25

*Gitson v. Trader Joe's Co.*,
  2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ................................... 6, 13, 14

*Greenberger v. GEICO Gen. Ins. Co.*,
  631 F.3d 392, 399 (7th Cir. 2011) ............................................................ 16

*In re Aqua Dots Prods. Liab. Litig.*,
    654 F.3d 748 (7th Cir. Ill. 2011)................................................................ 17

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013)............................................................ 20, 22

*Jamison v. Summer Infant (USA), Inc.*,
    778 F. Supp. 2d 900 (N.D. Ill. 2011) ........................................................ 19

*Jou v. Kimberly-Clark Corp.*,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................... 9

*Kane v. Chobani, Inc.*,
    973 F. Supp. 2d 1120 (N.D. Cal. 2014) ................................................ 6, 10

*Lake v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill.2013) ......................................................... 16

*Lateef v. Pharmavite LLC*,
    2013 WL 1499029 (N.D. Ill. Apr. 10, 2013) ............................................ 24

*Leonhart v. Nature's Path Foods, Inc.*,
    2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ............................................ 6

*Luckey v. Baxter Healthcare Corp.*,
    No. 95 C 509, 1996 U.S. Dist. LEXIS 6252 (N.D. Ill. May 8, 1996) ......... 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................. 16

*MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*,
    715 F. Supp. 2d 786 (N.D. Ill. 2010) ....................................................... 24

*McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*,
    93 F.3d 380 (7th Cir. 1996) ..................................................................... 25

*McKinnis v. Kellogg USA*,
    WL 4766060 (C.D. Cal. Sept. 19, 2007) .................................................. 14

*Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*,
    913 F. Supp. 1088 (N.D. Ill. 1995) .......................................................... 19

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
    865 N.E.2d 334 (Ill. App. Ct. 1st Dist. 2007)........................................... 24

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ..................................................................... 7

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ........................................ 8, 9, 11, 12

*Pesina v. Midway Mfg. Co.*,
    948 F. Supp. 40 (N.D. Ill. 1996) .............................................................. 22

*POM Wonderful LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014)................................................................... 5, 22, 23

*Pratt v. Whole Foods Market Mkt. Ca., Inc.*,
    2014 WL 1324288 (N.D. Cal. Feb. 11, 2014) ........................................ 6

*Rooney v. Cumberland Packing* Co.,
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................................ 9

*Ryan v. Chemlawn Corp.*,
    935 F.2d 129 (7th Cir. 1991) ........................................ 20

*Saubers v. Kashi Co.*,
    2014 WL 3908595 (S.D. Cal. Aug. 11, 2014) .................................... 21, 23

*Saunders v. Michigan Ave. Nat. Bank*,
    662 N.E.2d 602 (Ill. App. Ct. 1996) ........................................ 14

*Stewart v. Smart Balance*, *Inc.*,
    2012 WL 4168584 (D.N.J. June 26, 2012) ................................. 5, 18, 19

*Sugawara v. Pepsico, Inc.*,
    2009 WL 1439115 (E.D. Cal. May 21, 2009) ........................................ 12

*Surzyn v. Diamond Foods, Inc.*,
    2014 WL 2212216 (N.D. Cal. May 28, 2014) ........................................ 9

*Swearingen v. Amazon Preservation Partners, Inc.*,
    2014 WL 3934000 (N.D. Cal. Aug. 11, 2014) ........................................ 6

*Thomas v. Costco Wholesale Corp.*,
    2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) ........................................ 6

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ........................................ 23

*Trujillo v. Apple Computer, Inc.*,
    581 F. Supp. 2d 935 (N.D. Ill. 2008) ........................................ 14

*United States v. DISH Network, LLC*,
    2011 WL 475067 (C.D. Ill. Feb. 3, 2011) ........................................ 20

*United States v. Western Pac. R.R. Co.*,
    352 U.S. 59 (1957) ........................................ 20

*Wheeler v. Sunbelt Tool Co.*,
    537 N.E.2d 1332 (Ill. App. Ct. 4th Dist. 1989) ........................................ 24

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................ 14

**Statutes**

815 ILCS 505/11 ........................................ 19

815 Ill. Comp. Stat. 505/1 ........................................ 19

815 Ill. Comp. Stat. 505/2 ........................................ 16

**Other Authorities**

Jill Corleone, *White Sugar vs. Organic Evaporated Cane Juice*, Livestrong.com (Jul. 26, 2014), http://www.livestrong.com/article/392941-white-sugar-vs-organic-evaporated-cane-juice ................................................................................................................. 4

Plaintiff Rochelle Ibarrola ("Plaintiff"), by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Dismiss filed by Defendant Kind, LLC ("Defendant" or "Kind"). In support thereof, Plaintiff states the following:

## INTRODUCTION AND SUMMARY OF ARGUMENT

This action is brought by Plaintiff on behalf of herself and all others persons who spent money to purchase the following products manufactured, marketed, distributed, and sold by Defendant: (1) Kind Healthy Grains Vanilla Blueberry Clusters with Flax Seeds, (2) Kind Healthy Grains Maple Walnut Clusters with Chia & Quinoa, (3) Kind Healthy Grains Oats & Honey Clusters with Toasted Coconut, and (4) Kind Healthy Grains Cinnamon Oat Clusters with Flax Seeds (collectively, the "Products"). Plaintiff's First Amended Class Action Complaint alleges four causes of action: common-law fraud [¶¶ 62-68]; unjust enrichment [¶¶ 69-74]; breach of express warranty [¶¶ 75-80]; and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) [¶¶ 81-85].

Defendant moves to dismiss the First Amended Class Action Complaint ("FAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As demonstrated below, Plaintiff has adequately alleged sufficient facts to support the existence of the causes of action brought against Defendant, Defendant's arguments are without merit, and its Motion should be denied.

**Plaintiff's Current Allegations.** For various health reasons, many consumers prefer to not only know the sugar content of their prospective food purchases, but also the nature and source of those sugars. Whereas unrefined sugar contains a variety of beneficial vitamins, minerals, enzymes, fibers, phytonutrients, and antioxidants, the refining process used in the production of many sweeteners strips sugars of these natural nutritional benefits. Thus, additional information regarding the nature and source of the sugars in food products gives

1

discerning food purchasers, presented with a myriad of options all proclaiming their superiority over competing products, a clearer picture of the relative benefits of these various options.

As part of this extremely competitive market, Defendant offers the Products, part of its Kind Healthy Grains line of snack products. Marketed as a nutritious snacking option, the Products' labeling, until after the filing of this lawsuit, included the claim, "No Refined Sugars." In actuality, however, the Products contain Evaporated Cane Juice (ECJ) and molasses, both of which are refined sugars.

Looking for a healthy and nutritious snack, Plaintiff purchased the Products— specifically, the Vanilla Blueberry Clusters with Flax Seeds variety—on multiple occasions. Plaintiff was unaware, when purchasing the Products, that ECJ and molasses are actually refined sugars. In choosing the Products over competing options, Plaintiff relied specifically on Defendant's false and misleading claim that the Products contained "No Refined Sugars" and would not have purchased the Products if not for this representation.

**<u>Defendant's Distortion of Plaintiff's Allegations.</u>** This case is not about what Plaintiff thought the Products contained, but what Plaintiff thought they did *not* contain: refined sugars. Defendant seizes upon the term, "natural sugar cane," mentioned only once in the FAC in the context of precatory scientific facts, [FAC ¶ 32], and attempts to portray it as an essential element of Plaintiff's factual allegations. This "straw man" argument provides no basis to dismiss the FAC. Plaintiff sought a product that contained no refined sugars and relied upon Defendant's representation that its Products contain "No Refined Sugars." Yet, the Products do contain refined sugars that are, based on a literal definition of the word, "refined," at least to some degree. What renders a sugar "refined" and whether ECJ and molasses meet this definition are disputed questions of fact that have no bearing on a determination under Rule 12(b)(6).

2

Disregarding Plaintiff's current allegations, Defendant chooses instead to try to remold them to fit its prior arguments, summing up Plaintiff's factual allegations as follows: [P]laintiff now claims that she saw the ingredients "***evaporated cane juice***" and "***molasses***" on the Product label, understood that they were forms of sugar, and yet somehow still believed that the Product's sugar ingredient was only unprocessed "natural sugar cane," i.e., a sugar cane stalk." [Def.'s Mem. of Law in Supp. of its Mot. to Dismiss Pl's First Am. Compl. ("MOL") p. 3]. This is but one of many instances in which Defendant purports to summarize and dispatch Plaintiff's claims but misstates them to such a substantial degree that the proposition Defendant addresses bears no relation to the actual issues in this case. Plaintiff was deceived not because of any affirmative belief that ECJ and molasses were "natural sugar cane" or any other specific substance. Rather, Plaintiff was deceived because she thought that those ingredients were not refined sugars when in fact they are.

This is not an unreasonable belief. Even if Plaintiff understood that ECJ and molasses were forms of sugar, she had no reason to believe they were refined sugars. Defendant provides no support for its conclusory assertion that consumers know that all sugar-based food ingredients "necessarily undergo some type of processing." [*Id*.]. In any case, Plaintiff is alleging that she interpreted "No Refined Sugars" to mean not that all sugars in the Products were entirely unprocessed, but that, to the extent the Products contained non-naturally occurring sugars, such sugars were, as the Product's packaging claimed, *unrefined*. Likewise, Defendant fails to explain why Plaintiff's knowledge of the Products' overall sugar content or of the general presence of added sugars somehow undermines the reasonableness of Plaintiff's reliance on the "No Refined Sugars" representation. *See* [*Id*.].

Defendant places a false burden on Plaintiff, insisting that she have actual knowledge of

3

the properties and characterization of the ingredients ECJ and molasses. *See* [MOL p. 4]. There is no support for such a requirement. The issue at the heart of Plaintiff's current allegations is the "No Refined Sugars" representation; the naming of specific ingredients remains relevant only to the extent that these names did not indicate to Plaintiff that the ingredients are refined sugars.

**Plaintiff's Theory Is Not Contradicted By The Initial Complaint.** While the online article referenced in Plaintiff's original Complaint explains how ECJ differs from common white sugar, it provides no basis for Defendant's contention that ECJ and molasses cannot plausibly be considered to be refined sugars. First, the article's use of the headings "Raw Sugar," "Refined Sugar," and "Evaporated Cane Juice" clearly does not refer to three distinct ingredients but rather to the various *processes* used to make common white sugar and ECJ. Contrary to Defendant's contention, nowhere in the article does the author state that ECJ is not considered a "refined sugar."[1] Nor does the fact that molasses is refined differently than white sugar establish or suggest that molasses is not properly classified as a "refined" sugar.

As set forth in the FAC, ECJ and molasses, though "less refined" than white sugar, are nevertheless refined and, as a result, possess only trace amounts of the nutrients present in naturally occurring and unrefined sugars. [FAC ¶¶ 33-34]. Notably, the updated version of the cited article significantly tones down its prior language regarding the nutritional advantages of ECJ, now stating that, [n]utritionally, [ECJ and white sugar] aren't that different." Jill Corleone, *White Sugar vs. Organic Evaporated Cane Juice*, Livestrong.com (Jul. 26, 2014), available at http://www.livestrong.com/article/392941-white-sugar-vs-organic-evaporated-cane-juice. Even if these materials do not directly establish that ECJ and molasses are refined sugars, this is

---

[1] To the extent Defendant derives this proposition from the article's headings, the article as a whole indicates that this is not what was intended, as the "Refined Sugar" section clearly refers to the process to make common white sugar, not the entire class of refined sugars.

clearly a disputed question of fact that need not be resolved at this stage.[2]

**The Alternative, Comparison Products Demonstrate Plaintiff's Injury.** As further explained below, the comparison products support Plaintiff's injury allegations because they represent what Plaintiff actually received, namely, a snack with refined sugars. While Defendant contends that a relevant comparison product would be one actually containing no refined sugars, this is not correct. Defendant cites no basis for this proposition, nor does Defendant explain how this comparison would in any way indicate the economic consequences of the alleged misrepresentation. In fact, the main authority Defendant cites in alleged support of this proposition, *see* [MOL p. 16], actually reinforces the propriety of Plaintiff's comparison products. *See Stewart v. Smart Balance, Inc*. 2012 WL 4168584, at *11 (D.N.J. June 26, 2012) (suggesting that a relevant comparison product is one that represents not what defendant promised but rather "what was ultimately delivered.").

**The Primary Jurisdiction Doctrine is Inapplicable.** With respect to this Court's reasoning based on *POM Wonderful LLC v. Coca-Cola Co*., 134 S.Ct. 2228 (2014) [Doc. 59, p. 12], neither Defendant's contentions nor any subsequent authorities provide any compelling reason to reassess this position. Moreover, the ramifications of *POM Wonderful* need not be considered, because Plaintiff's *current* allegations do not justify invoking primary jurisdiction under any established interpretation of the doctrine. Unlike Plaintiff's prior allegations, her current allegations are only tangentially related to the ongoing FDA determination regarding the naming of ECJ, and there is no indication that the FDA's findings will yield any relevant information with respect thereto. Defendant provides no authority supporting the invocation of primary jurisdiction based on the vague possibility that an investigation might provide some insight into issues related to the litigation. *See Gustavson v. Mars, Inc*., 2014 WL 2604774, at

*10 (N.D. Cal. June 10, 2014).

For all of these reasons, Defendant's Motion to Dismiss should be denied in its entirety.

## **ARGUMENT**

## I.   **PLAINTIFF PLAUSIBLY ALLEGES A CLAIM FOR RELIEF.**

No longer pursuing those claims pertaining to the deceptive naming of ECJ, Plaintiff's remaining claims relate to the Defendant's false and misleading labeling of the Products as containing "No Refined Sugars."  Though purporting to acknowledge this shift in focus, *see* [MOL pp. 1, 2-3], Defendant nevertheless continues to rely largely on cases involving the deceptive naming of food ingredients.  Not surprisingly then, many of the principles Defendant asserts give little guidance as to the proper disposition of Plaintiff's current claims.

For example, Defendant, citing several authorities, derives two general criteria allegedly warranting dismissal of false advertising claims involving misrepresentations of sugar content. [MOL p. 8]   However, Defendant's purported test, based solely on cases concerning the deceptive naming of ingredients, is completely inapplicable to Plaintiff's current deceptive-labeling claims.[3]  As evidenced by the Court's Order dismissing Plaintiff's initial Complaint, the accuracy of the Products' Nutrition Facts Panels or ingredient lists are major considerations in the assessment of whether an sweetener's name is misleading.  But, where the issue is the falsity or deceptiveness of a "No Refined Sugars" claim, neither the amount of sugars stated on the product's Nutritional Facts Panels nor the names thereof in ingredients lists (which generally do not indicate whether the sugar is refined) are of any significant relevance.

---

[3] The cited portions of *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1132-35 (N.D. Cal. 2014), *Pratt v. Whole Foods Market Mkt. Ca., Inc.*, 2014 WL 1324288, at *9 (N.D. Cal. Feb. 11, 2014), *Avoy v. Turtle Mountain, LLC*, 2014 WL 587173, at *5 (N.D. Cal. Feb. 11, 2014), *Gitson v. Trader Joe's Co.*, 2013 WL 5513711, at *8 (N.D. Cal. Oct. 4, 2013), *Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 1338161, at *9 (N.D. Cal. Mar. 31, 2014), *Thomas v. Costco Wholesale Corp.*, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014), and *Swearingen v. Amazon Preservation Partners, Inc.*, 2014 WL 3934000, at *1 (N.D. Cal. Aug. 11, 2014) all relate to the disposition of claims alleging the deceptive naming of ECJ.

Defendant's other arguments, though perhaps more germane to the actual facts of this case, nevertheless fail for the reasons discussed below.

### A. Plaintiff Plausibly Alleges Deception and Reliance.

This jurisdiction has recognized that, to prevail on a claim for damages under the ICFA, a Plaintiff must demonstrate "(1) a deceptive act or practice; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [defendant] intended [plaintiff] and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception." *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Here, Defendant included the false claim "No Refined Sugars" on the front panel of the Products' labels in order to target health-conscious consumers and lead them to believe that the Products did not contain refined sugars. Unrefined sugars contain more of the natural mineral and nutrients than refined sugars. This distinction enticed Plaintiff and Class Members, looking for a healthy snack, into purchasing the Products.

### 1. Plaintiff Offers a Plausible Interpretation of "No Refined Sugars."

Plaintiff understood "No Refined Sugars" to mean that the Products did not contain refined sugars. The idea that Plaintiff took "No Refined Sugars" to mean the Products "contained only sugar cane in a natural state" was contrived entirely by Defendant.

With respect to Plaintiff's expectations, the FAC states very clearly that what Plaintiff sought when purchasing the Products—and what Defendant promised—was a snack with no refined sugars. *See, e.g.*, [FAC ¶¶ 4, 6, 11]. Plaintiff took "No Refined Sugars" to mean that the Products contained no refined sugars, or, restated in positive terms, only naturally occurring or unrefined sugars. Nevertheless, Defendant's MOL, without explanation or justification, ignores these unambiguous allegations. Instead, Defendant rewrites Plaintiff's allegations to construct

the case it wishes it was defending, insisting that "[P]laintiff alleges that she interpreted 'No Refined Sugars' to mean that the product contained no form of sugar *other* than 'natural sugar cane.'" [MOL p. 1] (citing FAC ¶ 32). Defendant repeatedly references a portion of the FAC that describes, as a precatory fact distinct from Plaintiff's substantive allegations, the nutrients present in "[n]aturally occurring, unrefined sugar, or natural sugar cane." [FAC ¶ 32]. While this paragraph explains consumers' rationale for selecting products with no refined sugars, the FAC neither states nor implies, here or anywhere else, that Plaintiff thought "No Refined Sugars" meant that the only sugar the Products contained was "natural sugar cane," and Defendant neither explains nor justifies how it derived this very specific assumption from Plaintiff's allegations. This false premise underlies many of Defendant's subsequent arguments.

Based on this this mischaracterization of Plaintiff's allegations, Defendant goes on to argue that dismissal of Plaintiff's claims is warranted because Plaintiff has failed to allege a plausible definition of "No Refined Sugars." Even if Defendant directed this argument to Plaintiff's actual understanding of "No Refined Sugars" rather than to its own contrived interpretation thereof, this argument would not be compelling. Though Defendant contends that a plaintiff's failure to allege a plausible definition of "No Refined Sugars" may be a basis for Rule 12 dismissal, the sole authority Defendant cites in support of this proposition is *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013). Yet, the circumstances in *Pelayo* are readily distinguishable from those herein. In holding that the term "All Natural" was not deceptive, the *Pelayo* court relied on an informal FTC statement that the term "natural" can "be used in numerous contexts and may convey different meanings depending on that context." *Id.* at 979 (quoting 75 Fed. Reg. 63552-01). In other words, the term "natural," the meaning of which depends entirely on its context, is thus sufficiently ambiguous that any reliance thereon

cannot be justified and, though not labeled as such by the *Pelayo* court, essentially amounts to "mere puffery." *See, e.g.*, *Barbara Sales, Inc. v. Intel Corp.*, 879 N.E. 2d 910, 917 (Ill. 2007). In contrast, the definition of "No Refined Sugars" does not depend on its context. Whereas an ingredient may be "natural" in some products and not in others, what constitutes a "refined sugar," while a question of fact that will require determination, is an objective fact determinable without reference to its context. *Rooney v. Cumberland Packing* Co., 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012), a case relied on heavily by the *Pelayo* court, only reinforces this distinction. Though the claims therein relating to the deceptive branding of "raw" sugar were dismissed, part of the court's rationale in doing so was that the products' packaging never used the terms "unprocessed" or "unrefined." *See id.* at *4. Thus, *Rooney* supports the proposition that "unrefined," unlike "All Natural," is a finite quality that can justify reasonable reliance, and that dismissal of allegations based on an express "No Refined Sugars" representation is improper.

In addition to these factual distinctions, a variety of other considerations suggest that *Pelayo* should be given minimal weight in the instant determination. As an initial matter, *Pelayo* is not binding on this Court. Second, the *Pelayo* court itself expressly acknowledged the atypical nature of its decision, pointing out that "[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Id.* at 978. Third, even in circumstances "nearly identical" to those in *Pelayo*, other courts have declined to follow it. *See Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at *3 (N.D. Cal. May 28, 2014) (declining to follow *Pelayo* and holding that the deceptiveness of the term "All Natural" was a question of fact); *see also Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013) (holding that the deceptiveness of the term "natural" was a question of fact and declaring that the *Pelayo* court's contrary conclusion "is at odds with basic logic,

9

contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit").

Defendant's arguments with respect to the Products' ingredient list, likewise based on the aforementioned misstatement of Plaintiff's allegations, are similarly unavailing. As noted above, Plaintiff's actual allegation is that she thought "No Refined Sugars" meant that the Products contained only naturally occurring or unrefined sugars, an impression in no way refuted by the Products' ingredient list. "Refined" and "unrefined" are broad classifications, each of which encompasses a variety of specific sweeteners, and a product's ingredient list generally will not (and perhaps cannot) indicate the "refined" or "unrefined" nature of specific sweeteners contained therein. *See* [MOL p. 14] (citing 21 C.F.R. § 101.9(c)(6)(ii)) ("[T]he Nutrition Facts Panel is not permitted to draw distinctions between 'refined' and 'unrefined' sugars."). Defendant must acknowledge this fact, because, unless the "No Refined Sugars" claim was knowingly false, Defendant must have considered ECJ and molasses to be "unrefined sugars," and the names of these products give no indication of their "unrefined" (or "refined") nature. In sum, Plaintiff sought a Product with no refined sugars, and, because "unrefined" and "refined" are broad categories not reflected in ingredient lists, that the Products' ingredient list did not include specific notation of an "unrefined" sweetener in no way undermines the plausibility or reasonableness of Plaintiff's reliance on Defendant's "No Refined Sugars" claim.

Contrary to Defendant's contention, *Kane* does not support a contrary finding in this regard. In *Kane*, the fact that the ingredient list included ECJ, which plaintiffs knew or should have known was a form of sugar, was dispositive because of the nature of the *Kane* plaintiffs' allegation: that they thought the product they purchased contained "*no added sugars.*" *See Kane*, 973 F. Supp. 2d at 1132-33 (emphasis added). Here, however, Plaintiff does not allege that she

10

thought Defendant's Products contained no added sugars. Nor has Defendant provided any explanation for why or how the inclusion of ECJ and/or molasses in the ingredient list should have alerted Plaintiff that Products contained *refined* sugars.

### 2. Plaintiff Alleges Why ECJ and Molasses Are "Refined" Sugars.

Contrary to Defendant's assertions, the FAC states very clearly why ECJ and molasses are "refined" sugars. *See, e.g.*, [FAC ¶¶ 30, 33-34, 36-38] (explaining the general refining process and the specific processes used to produce ECJ and molasses).

To the extent Defendant asserts that a more specific allegation is required, it is mistaken. The authorities Defendant cites in support of this argument, *see* [MOL pp. 10-11], involved representations as to "natural" content. As explained above, "all natural" is an ambiguous term, the meaning of which depends on its context. Accordingly, adequately alleging that the inclusion of specific ingredients renders an "all natural" claim deceptive requires an explanation of *why* these ingredients are unnatural. *See Figy v. Frito-Lay N. Am., Inc.*, 2014 WL 3953755, at *10 (N.D. Cal. Aug. 12, 2014) ("It is insufficient under Rule 9(b) to simply assert, no matter how foreign or synthetic-sounding an ingredient's name might be, that an ingredient is unnatural."). Such explanation is required in such cases because "natural" is used in reference to a variety of very different standards, and without some indication of the principles underlying plaintiff's natural/unnatural distinction (whether the product is man-made, is not organic, is not normally found in products of this type, or other disparate properties a plaintiff might ascribe to a "natural" product), a defendant cannot adequately address these allegations. *See Pelayo*, 989 F. Supp. 2d at 978-79. In contrast, the term "refined" is far less ambiguous, clearly referring to the specific refining processes used to produce sweeteners. At what stage in this process a sugar becomes "refined" remains a central issue in this case, but this is a question of fact.

11

In addition, the misleading nature of Defendant's "No Refined Sugars" claim is not diminished by the statements made in the Products' Nutritional Facts Panel. Contrary to Defendant's contentions, the amount of "Sugars" present in the Products is immaterial because, as explained above, the issue herein is not the Products' overall sugar content but their content of *refined* sugars, which cannot be ascertained from the Products' Nutritional Facts Panels or other labeling. Likewise, the other information in the Nutritional Facts Panel, including vitamin and mineral content, is similarly beside the point, as Plaintiff only contends that she was misled as to the "nutritional value" of the Products in the sense that the sweeteners actually used therein did not possess the nutritional properties of the sweeteners she justifiably believed the Products contained. Unless Defendant is suggesting that Plaintiff should have assessed the sugars and overall vitamin and mineral content of the Products and thereby should have been able to ascertain that ECJ and molasses were refined sugars, these facts are not relevant.

**B.    KIND's Labeling Is Deceptive To A "Reasonable Consumer."**

For reasons similar to those above establishing that Plaintiff was deceived by and relied upon Defendant's "No Refined Sugars" representation, this claim is also deceptive to a reasonable consumer.

**1.    Consumers Know That There Are Unrefined Sugars Available As Food Ingredients.**

In its argument that Plaintiff's allegations regarding what a reasonable consumer would believe are implausible, Defendant cites authorities rejecting as implausible allegations that a reasonable consumer would think that "crunchberries" were an actual fruit or that "All Natural" pastas came from "Ravioli trees and Tortellini bushes." [MOL p. 12] (citing *Pelayo*, 989 F. Supp. 2d at 978 & n.4; *Sugawara v. Pepsico, Inc.*, 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009)). Compared to these colorful but clearly implausible allegations, the allegation here— that

a reasonable consumer would take "No Refined Sugars" to mean the Products contained only naturally occurring or unrefined sugars—is sufficiently plausible. Defendant's arguments to the contrary are not compelling because they are based on an erroneous reading of Plaintiff's allegations. Plaintiff does not allege that a reasonable consumer would understand the claim of "no refined sugars" to mean a product contains only "natural sugar cane," as in the plant, but rather that they would take it to mean the product contains only naturally occurring or unrefined sugars. Whether or not the former (mis)statement defies common sense, the latter, an accurate reflection of Plaintiff's actual allegations, is clearly plausible.

### 2. Plaintiff Never Alleges She Was Misled By The Claimed Sugar Content.

Just as the Products' ingredient list and Nutrition Facts Panel are immaterial to Plaintiff's own deception, they likewise have no bearing on whether Defendant's "No Refined Sugars" claim is deceptive to a reasonable consumer. The primary authority Defendant cites in support of its argument to the contrary, if anything, supports the conclusion that Plaintiff's allegations regarding deception and reliance are sufficient to withstand a motion to dismiss. Defendant relies on a portion of *Gitson v. Trader Joe's Co*., 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) disposing of an allegation that the name "soy milk" deceptively implied that the product was common dairy milk. *See id*. at *6-7. This allegation was rendered implausible by other statements on the product's labeling representing that it was "LACTOSE AND DAIRY FREE" and an "alternative to dairy milk." With respect to the principles underlying this holding, the court expressly remarked that "it is a 'rare situation' in which granting a motion to dismiss on a deceptive labeling claim is appropriate," and that dismissal should only be granted where, as therein, "the accused label itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived.'" *See id*. at *7 (quoting *Williams v. Gerber Prods. Co*., 552

13

F.3d 934, 939 (9th Cir. 2008)). In contrast to the circumstances in *Gitson*, the labeling of the Products herein did not give reasonable consumers and Plaintiff any reason to reassess their interpretation of "No Refined Sugars" as meaning the Products contained only naturally occurring or unrefined sugars. Thus, *Gitson* and *Williams* establish that, because the deceptiveness of the labeling challenged herein is not directly foreclosed by the Products other labeling, Rule 12 dismissal of Plaintiff's claims is not appropriate.

Defendant's arguments regarding Illinois law are similarly unavailing. Because the names of specific sugar products, as stated in ingredient lists, give no indication regarding whether they are refined or unrefined sugars, the Products' ingredient lists have no bearing on Plaintiff's allegations. The authorities cited by Defendant—*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir., 2001), *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935 (N.D. Ill. 2008), and *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E.2d 602 (Ill. App. Ct. 1996)—are easily distinguishable in that these cases involved omissions or implied representations, not express claims, and any false impressions they might have created were arguably dispelled in other parts of the product's packaging or in other materials defendant provided to consumers. In contrast, here Plaintiff is challenging an express representation by Defendant that is not negated or qualified by any other information Defendant provides to consumers.

Defendant's contentions regarding the Products' Nutrition Fact Panels are also irrelevant, as Plaintiff alleges that she was deceived regarding the *type*, not the *amount*, of sugar in the Products. Even if a Nutrition Facts Panel is not permitted to draw distinctions between "refined" and "unrefined" sugars, Defendant does not explain why it could not have made such disclosures elsewhere on the Products' packaging. Moreover, Defendant's reliance on the standard set forth *McKinnis v. Kellogg USA*, WL 4766060 (C.D. Cal. Sept. 19, 2007) is clearly misplaced, as

14

Plaintiff alleges unambiguously that the Products' packaging *does* "affirmatively mislead the consumer by means of *specific representations*." [MOL p. 14].

## II.  PLAINTIFF ALLEGES STANDING UNDER ARTICLE III AND STATE LAW.

### A.  Plaintiff Plausibly Alleges Injury And Actual Damages.

Contrary to Defendant's characterization, Plaintiff's allegations of injury are not limited to the claim that she would not have purchased the Products had she known they contained refined sugars.  The FAC clearly alleges that Plaintiff specifically sought a product with no refined sugars and was willing to pay the premium manufacturers generally charge for such products, an expense she was willing to incur given the additional benefits unrefined sugars provide.  *See, e.g.*, [FAC ¶¶ 5, 11, 40-43].  But, because the Products do contain refined sugars, their value to both Plaintiff and reasonable consumers is diminished to the extent of the aforementioned price premium.  *See id.*  Moreover, Plaintiff adequately alleges that, had she known the falsity of Defendant's "No Refined Sugars" claim, she would not have purchased the Products, and instead would have either foregone purchasing a snack or would have purchased a product that did contain refined sugars but which, accordingly, retailed for a lower price.  Thus, under the standard set forth in *Frye v. L'Oreal USA, Inc*., 583 F. Supp. 2d 954 (N.D. Ill. 2008), Plaintiff has adequately alleged that the falsity of Defendant's "No Refined Sugars" claim has had "observable economic consequences," namely, that it diminished the value to her of the Products she purchased and caused her to choose the Products over less expensive alternatives. *See id.* at 958.  Regardless of this Court's disposition of Plaintiff's prior claims pertaining to the use of the term ECJ, Plaintiff has adequately alleged injury attributable to the "No Refined Sugars" representations currently at issue in this case.

### 1.  A Claim Under The ICFA Has Been Established

The ICFA "provides a remedy for 'unfair methods of competition and unfair or deceptive

acts or practices' in specific commercial transactions." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 Ill. Comp. Stat. 505/2). The ICFA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2. To state a cause of action under the ICFA, Plaintiffs must allege: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277, 335 Ill. Dec. 181 (Ill. App. Ct. 2009); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). *Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 912 (N.D. Ill.2013).

Plaintiff easily meets all five requirements. First, Plaintiff alleges that Defendant's claim that its Products contain "No Refined Sugars" was misleading to Plaintiff and Class Members because the Products contained Evaporated Cane Juice and molasses, which are both refined sugars. [FAC ¶ 6]. Second, Plaintiff alleges that Defendant knowingly made this misleading and deceptive claim about the ingredients of the Products at both the point of sale and in online promotional materials. [FAC ¶12]. And third, Plaintiff alleges that, had she known that Defendant's claim was false, she would not have purchased the Products, she would not have paid such a premium price, and/or she would have purchased a less expensive product. [FAC ¶5].

### 2. Plaintiff Has Established Observable Economic Consequences

In order to establish Article III standing, a Plaintiff must demonstrate injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). With respect to

16

IFCA claims, "[a] financial injury creates standing." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. Ill. 2011). Plaintiff alleges that she "was looking for a healthy nutritional snack at the time of purchase of the Product and was unaware that Evaporated Cane Juice and molasses were actually refined sugars." [FAC ¶ 6]. "Plaintiff would not have purchased the Product if not for the false and misleading statement made by Defendant that the Products contained 'No Refined Sugars.'" *Id.* In a case involving similar ICFA claims, a court found that "the plaintiff was injured because it would not have purchased the [product] had it known that it was municipal tap water instead of 100% natural spring water." *See Chicago Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 2014 U.S. Dist. LEXIS 16871, 8-9 (N.D. Ill. Feb. 11, 2014); *see also In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011)). The injury, which is financial in nature, was complete at the time of purchase, and the plaintiff allegedly paid more than it would have for the water. The court held that "[t]hese allegations suffice to allege an injury and causation for purposes of Article III standing." *Id.*

Plaintiff does recognize that this Court distinguished the facts in *Chicago Faucet Shoppe* from those involved in Plaintiff's prior allegations that the use of the term ECJ is deceptive. *See* [Doc. 59, p. 8]. However, Plaintiff's allegations have changed. As explained above, Plaintiff alleges that, because of the value she and other reasonable consumers place on the relative nutritional benefits of unrefined sugars, Defendant's "No Refined Sugars" representation allowed Defendant to charge, and made her and other reasonable consumers willing to pay, a price premium over products with refined sugars.

### 3. Plaintiff's Comparison Products Support Her Injury Allegations

Again, Defendant fails to recognize that its Motion to Dismiss pertains to the FAC, not Plaintiff's original complaint. Regardless of the sufficiency of Plaintiff's original injury claims,

17

the FAC *does* allege that Plaintiff "would have purchased a less expensive snack or no snack at all" absent Defendant's "No Refined Sugars" claim. *Cf.* [MOL p. 16]. For example, in clear and direct contradiction of Defendant's assertions, Plaintiff alleges that "she would not have purchased the Product, she would not have paid such a premium price, and/or she would have purchased a less expensive product." [FAC ¶ 5].

The primary relevance of the list of comparison products in the FAC is to establish that, absent Defendant's false representation, the value of the Products would be diminished. *See* [FAC ¶ 43]. Failing to grasp this point, Defendant argues that, because Plaintiff sought a product without refined sugars, the comparison products containing refined sugars are irrelevant, and, in turn, support its argument that Plaintiff suffered no cognizable injury. [MOL p. 16]. Defendant cites *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012), which supports Plaintiff's position. Dissimilarities in the comparison products there resulted in dismissal without prejudice and with leave to amend, accompanied by the suggestion that a sufficient comparison product would be one that met plaintiff's other purchase criteria but, with respect to the alleged deceptive aspect, represented "what was actually delivered." *Id.* at *11.[4]

Here, Plaintiff's sole purchase criteria[5] related to the Defendant's deceptive "No Refined Sugars" claim. *See, e.g.*, [FAC ¶¶ 4-6, 11, 39]. Thus, a sufficient comparison product in this

---

[4] In *Stewart*, plaintiffs sought, when purchasing the product at issue, a milk product that (i) was fat free, (ii) contained omega-3s, and (iii) provided the "rich and creamy characteristics" of 2% or whole milk. *Id.* at *10-11. They alleged that, because the purchased product contained one gram of fat per serving, it "fat free" labeling was deceptive. *Id.* at *1. However, for purposes of alleging measurable injury, the comparison products plaintiffs referenced were insufficient because they either did not contain omega-3s or did not provide the "rich and creamy characteristics" of 2% or whole milk. *Id.* at *11. In dismissing with leave to amend, the court instructed that: "It would seem that the more apt comparison necessary to calculate damages with a reasonable degree of certainty would be a product with Omega–3s and at least 1 gram of fat, which is what was ultimately delivered." *Id.*

[5] Plaintiff's purchase criteria did not include overall sugar or calorie content. Defendant's argument that the additional sugar in some of the comparison products renders them too dissimilar misconstrues Plaintiff's allegations. *See* [MOL p. 16]. Plaintiff does not allege that the overall sugar or calorie content had any bearing on here purchase decision. Rather, she just want to make sure that any sugar and calories she consumed, regardless of their overall amount, would be accompanied by the nutritional benefits associated with unrefined sugars. [FAC ¶ 39]

case is a generally similar snack product that, with respect to the deceptive claim, represents what was actually delivered, namely, refined sugars. This is exactly what the comparison products referenced in the FAC represent. Thus, *Stewart*, if anything, affirms that the asserted comparison products are proper and support Plaintiff's allegations of cognizable injury.

###### B. Plaintiff Has Standing To Sue For Non-Illinois Sales.

The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). In *Jamison v. Summer Infant (USA), Inc.,* 778 F. Supp. 2d 900 (N.D. Ill. 2011), the Court determined that the ICFA applied to the defendants, even though their principal place of business was outside of Illinois, because they were engaged in "trade or commerce directly or indirectly affecting the people of [the State of Illinois]." In *Jamison v. Summer Infant (USA), Inc.,* 778 F. Supp. 2d 900, 910 (N.D. Ill. 2011).[6] Defendant's contention that Plaintiff lacks standing because the ICFA is limited in geographic scope is an argument that has been rejected by this jurisdiction on several occasions. *See Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp*., 913 F. Supp. 1088, 1140 (N.D. Ill. 1995) ("This Court believes that the Illinois Consumer Fraud Act, although intended to protect Illinois consumers, does not contain a geographic limitation"); *see also Continental X-Ray Corp. v. XRE*, 1995 U.S. Dist. LEXIS 14722, No. 93 C 3522 n.1 (N.D. Ill. 1995) (same).[7]

---

[6] While the trade or commerce provision of the ICFA "has been interpreted by courts in a variety of ways," *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005), the General Assembly has stated that the Consumer Fraud Act "shall be liberally construed to effect" its purposes. 815 ILCS 505/11a (West 1998). Although Plaintiff has properly alleged that Illinois substantive law should apply (See Complaint ¶¶14-18), "each case must be decided on its own facts." *Avery*, 216 Ill. 2d at 187. Any questions of fact concerning the application of the ICFA to out-of-state Plaintiffs would best be addressed after the parties have been allowed time to conduct reasonable and diligent discovery.

[7] For all of the reasons stated in opposition to Defendant's motion to dismiss the initial complaint (ECF No. 47 at 16-18, Plaintiff also has standing to pursue claims related to those flavor varieties of the Products she did not purchase. Defendant argues that Plaintiff "cannot predicate standing on injury which [s]he does not share" (MOL at

III.    **PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED UNDER THE PRIMARY JURISDITCTION DOCTRINE.**

The primary jurisdiction doctrine applies "where a claim that is originally cognizable in court '*requires* the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Luckey v. Baxter Healthcare Corp.*, No. 95 C 509, 1996 U.S. Dist. LEXIS 6252, *10 (N.D. Ill. May 8, 1996) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1957)) (emphasis added).   "There is no fixed formula for invoking the primary jurisdiction doctrine," *Luckey*, 1996 U.S. Dist. LEXIS 6252, at 10-11 (quoting *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991)), but the doctrine is not "designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 98 (N.D. Ill. 2013) (quotation omitted).   Moreover, it "should be invoked sparingly since it often results in added expense and delay to the litigants."  *Id*. at 97 (quoting *United States v. DISH Network, LLC*, 2011 WL 475067, at *2 (C.D. Ill. Feb. 3, 2011)).

A.    **The Primary Jurisdiction Doctrine Does Not Apply to Plaintiff's Claims.**

The mere fact that some issues raised by the FAC are tangentially related to a current FDA determination does not justify invocation of the primary jurisdiction doctrine.  As the above authorities establish, the circumstances in which invocation of the primary jurisdiction doctrine is appropriate are rare, and Defendant has provided no compelling reason why it should be invoked herein.  Specifically, Defendant argues invocation of the doctrine is appropriate because the FDA will consider the nature of ECJ and how it differs from other sweeteners as part of its

---

17 n.13), but Plaintiff has clearly alleged that she suffered the same injury shared by all purchasers of the Defendants' Products: she purchased a product prominently advertised as not containing an ingredient it in fact contained.  In accordance with established Seventh Circuit precedent, this Court properly deferred ruling on this issue—which is really one of adequacy under Rule 23—until class certification.  MTD Order at 10.

ongoing assessment regarding the proper *naming* of ECJ. However, the materials cited by Defendant give no indication that this FDA inquiry will determine or even assess whether ECJ is a "refined" sugar. Indeed, it is not obvious, nor does Defendant explain, how a determination of ECJ's proper naming will necessarily require or otherwise provide a finding as to ECJ's "refined" or "unrefined" classification. In any case, Defendant provides no authority supporting its proposition that invocation of the primary jurisdiction doctrine is justified by the vague possibility that some future guidance may result from an FDA inquiry into a related but not subsuming topic. *See Gustavson*, 2014 WL 2604774, at \*10 (declining to invoke primary jurisdiction doctrine where FDA, though having made vague statements indicating it might review of the labeling requirements at issue therein, had "provided little detail concerning what form those changes might take").

While Defendant lists a myriad of ECJ-related claims that were dismissed or stayed on primary jurisdiction grounds, these cases are easily distinguishable: All involved the *naming* of ECJ, which, as the ultimate issue in the current FDA determination, will necessarily be resolved thereby. Because there is no indication how or why that the "refined" or "unrefined" status of ECJ will be resolved by the current FDA, the same considerations do not apply herein. *See Saubers v. Kashi Co*., 2014 WL 3908595, at \*4 (S.D. Cal. Aug. 11, 2014) (distinguishing *Gustavson*, where the vague possibility of future review did not justify invocation of the primary jurisdiction doctrine, from those therein, where invocation was appropriate because the FDA was presently and "specifically reconsidering… the very issue at stake in [the] litigation). Moreover, Defendant neither justifies nor explains its conclusory assertions that a determination herein might result in "[non-] uniformity in the administration of the agency's food labeling requirements" or might conflict with a subsequent FDA decision. *See* [MOL p. 19].

In all, the invocation of primary jurisdiction herein, as proposed by Defendant, would amount to an effort to "secure [or perhaps just wait and hope the ECJ naming determination results in] expert advice [on] an issue conceivably within the agency's ambit." *See Jamison v. First Credit Servs.*, 290 F.R.D. at 98. Accordingly, this is not one of the rare circumstances where the invocation of the primary jurisdiction doctrine is appropriate.

**B.     The Supreme Court's Recent Decision in *POM Wonderful* Does Not Support Dismissal of This Case on Primary Jurisdiction Grounds.**

As the above authorities establish, the tangential relationship between Plaintiff's present allegations and the FDA's ongoing ECJ naming determination precludes invocation of the primary jurisdiction doctrine, regardless of the implications of *POM Wonderful*, 134 S. Ct. 2228 (2014). Nevertheless, the Supreme Court's holding therein further reinforces the inapplicability of the primary jurisdiction doctrine here. As this Court recognized in its prior Order, *POM Wonderful* instructs that "food and beverage labels regulated by the FDCA are not … off limits to Lanham Act claims," *see* [Doc. 59 p. 12] (quoting *POM Wonderful*, 134 S. Ct. at 2237), and this guidance that may also apply to ICFA claims given the substantial similarities between the two acts. *See* [*Id.* p. 11 n. 4] (citing *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996)).

Defendant's current arguments provide no compelling reason for the Court to abandon its prudently cautious approach to primary jurisdiction in light of the aforementioned Supreme Court guidance. Granted, *POM Wonderful* indicates that its holding with respect to the Lanham Act does not extend to "*some* state laws." *POM Wonderful*, 134 S.Ct. at 2238 (emphasis added), but this non-exclusive language does not evince a clear intent to restrict the Supreme Court's guidance to Lanham Act claims and exclude claims based on analogous state statutes. In addition, Defendant provides no explanation for why the ICFA would be among the state statues

22

unaffected by the *POM Wonderful* holding. Taken together with the above facts strongly suggesting the inapplicability of the primary jurisdiction doctrine in this case, this unresolved ambiguity regarding the scope of *POM Wonderful* clearly indicates that this case is not among the rare circumstances where invocation of the primary jurisdiction doctrine is appropriate.[8]

## IV.    THE FAC MEETS FEDERAL PLEADING STANDARDS.

### A.    The FAC Does Not Violate Rule 9(b).

To adequately plead a private cause of action under the ICFA, a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception. *Thrasher-Lyon v. Ill. Farmers Ins. Co*., 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (quoting *Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co*., 957 N.E.2d 1174, 1181 (Ill. App. Ct. 5th Dist. 2011) (citations omitted). Furthermore, an ICFA action must be pled "with the same particularity and specificity as that required under common law fraud. Therefore, a plaintiff "must allege with particularity the 'who, what, when, where, and how' of the fraud or misrepresentation." *Thrasher* 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Plaintiff's allegations more than adequately satisfy the Rule 9(b) requirements. She concisely characterizes Defendant's deceptive practice of labeling the Products with the false claim "No Refined Sugars" and that Defendant was aware that listing ECJ as an ingredient was misleading. *See, e.g.*, [FAC ¶ 4, 34, 45, 63-64]. Plaintiff indicates that Defendant intended for consumers to rely on the deception by stating, that as part of its marketing strategy, Defendant

---

[8] Moreover, dismissal on the basis of primary jurisdiction is without prejudice. *See, e.g.*, *Saubers*, 2014 WL 3908595, at *4. To the extent Defendant's arguments suggest otherwise, they are incorrect.

intended that Plaintiff rely upon Defendant's representations. [FAC ¶ 63]. Plaintiff also properly alleges that the deception occurred within the stream of commerce, [FAC ¶¶ 8, 15, 20-21, 24, 56, 63-64]; and that Plaintiffs have suffered damages that were proximately caused by Defendant's deception. [FAC ¶¶ 11, 42, 65-67, 74, 80, 84].

**B.    The Express Warranty Claim Does Not Fail As A Matter Of Law.**

To state a claim for breach of express warranty under Illinois law, "a plaintiff must show breach of an affirmation of fact or promise which was made part of the basis of the bargain." *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989). No particular words are necessary to create an express warranty; however, "a positive assertion of fact by seller at the time of the sale for the purpose of assuring the buyer of said fact and thereby inducing him to make the purchase, constitutes an express warranty." *Coryell v. Lombard Lincoln-Mercury Merkur*, 544 N.E.2d 1154, 1158 (Ill. App. Ct. 1989). Because express warranties are contractual in nature, "the language of the warranty itself controls and dictates the obligations and rights of the various parties." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.,* 865 N.E.2d 334, 340 (Ill. App. Ct. 2007); *Lateef v. Pharmavite LLC*, 2013 WL 1499029 (N.D. Ill. Apr. 10, 2013).

Defendant's contention that its "No Refined Sugars" claim cannot be proven false and thus cannot be the basis of an express warranty claim is without merit. Defendant relies on *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786 (N.D. Ill. 2010), which is clearly distinguishable from this case. Defendant's representation at issue here is not a vague, inherently subjective claim that the Products are of good or high quality or that consumers enjoy them. *Cf. id*. at 795 Rather, "No Refined Sugars" is a representation regarding a specific factual aspect of the Products that is capable of measurement without reference to subjective considerations. Though Defendant argues that adequately alleging an express warranty claim

24

requires assertion of a "plausible objective definition" of warranty language, Defendant provides no authority for imposing this additional requirement. [MOL p. 21]. Even if this requirement did exist, Plaintiff's logical interpretation of "No Refined Sugars" to mean the Products contained only unrefined sugars is clearly sufficient. In all, Defendant made the representation and it is factual in nature.[9] Further issues regarding whether the Products actually complied with this warranty are questions of fact, to be resolved at a later stage of this litigation.

## V.      DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD NOT BE WITH PREJUDICE.

Generally, "leave [to amend a complaint] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and is only denied "where there has been undue delay, dilatory motive on the part of the movant, repeated failure to cure previous deficiencies, and where amendment would be futile." *McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 385 (7th Cir. 1996). An amendment is futile where it is incapable of surviving a motion to dismiss. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). Plaintiff respectfully requests leave to amend if the First Amended Complaint is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: October 2, 2014                           RESPECTFULLY SUBMITTED,

---

[9] Although it did not include a claim for breach of warranty, Defendant has nevertheless known since the filing of Plaintiff's original complaint that Plaintiff contends the positive assertions of fact on Defendant's packaging—assertions made "at the time of sale for the purpose of assuring the buyer of said fact[s] and thereby inducing him to make [a] purchase" ("*Coryell*, 544 N.E.2d at 1158)—were false. *See* Class Action Compl. [ECF No. 1], filed Nov. 26, 2013 at ¶¶ 35-36, 39. This was sufficient notice that Plaintiff considered Defendant to be in breach of these express promises. *See Overland Bond & Inv. Corp. v. Howard*, 9 Ill. App. 3d 348, 358-359 (Ill. App. Ct. 1972)(noting that "[t]here are no particular words which must be used to constitute an adequate form of notice" and finding that, by having his car towed to the dealer's place of business and informing its employees that it could not be operated in a safe manner, the plaintiff had provided sufficient notice). Indeed, not long after the filing of Plaintiff's initial complaint, the Defendant removed the "No Refined Sugars" statement from its Products.

By: /s/ Dawn M. Goulet

Edward A. Wallace
Dawn M. Goulet
WEXLER WALLACE LLP
55 West Monroe St., Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
Facsimile: 312-346-0022
Email: eaw@wexlerwallace.com
Email: dmg@wexlerwallace.com

Nick Suciu III (*Admitted Pro Hac Vice*)
BARBAT, MANSOUR & SUCIU PLLC
434 West Alexandrine, Suite 100
Detroit, MI 48201
Telephone: 313-303-3472
Facsimile: 248-698-8634
Email: nicksuciu@bmslawyers.com

Jordan L. Chaikin (*Admitted Pro Hac Vice*)
PARKER WAICHMAN LLP
27300 Riverview Center Blvd, Suite 103
Bonita Springs, FL 34134
Telephone: 239-390-1000
Facsimile: 239-390-0055
Email: jchaikin@yourlawyer.com

Eric D. Holland (*Admitted Pro Hac Vice*)
R. Seth Crompton (*Admitted Pro Hac Vice*)
HOLLAND, GROVES, SCHNELLER & STOLZE, LLC
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com
Email: scrompton @allfela.com

*Counsel for Plaintiff Rochelle Ibarrola*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing *Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint* to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ Dawn M. Goulet